# Richmond.

## TAYLOR AND OTHERS v. NETHERWOOD AND OTHERS.

### JANUARY 31, 1895.

1. MECHANICS' LIEN—*Description of Property.*—The object of requiring a description is to inform the owner upon which of his property the lien is claimed, and to give notice thereof to purchasers and creditors, so that they may identify the property and protect themselves against the lien. If the property can be reasonably identified by the description given, it is all that the law requires. Code, section 2478.

2. MECHANICS' LIEN—*Sufficiency of Account—Extra Work.*—Where the work is contracted for as an entirety for a specific amount, and this is so set out in the account filed, all the information is given that is needed, or can reasonably be required. If extra work is done, it is sufficient to set out each item of the extra work and the price thereof. *Shackleford* v. *Beck,* 8) Va. 573, distinguished.

3. MECHANICS' LIEN—*Verification of Account.*—No particular form of verification is prescribed, and the certificate of a notary at the foot of the account filed that the contractor personally appeared before him, in his county or city, and made oath to the correctness of the account, is a sufficient verification under the statute.

4. MECHANICS' LIEN—*Notice to Owner of Property.*—Where the account is sufficient, and a copy thereof, together with a statement of the intention to claim the lien, is served on the owner within the time prescribed by the statute, this is a sufficient notice to the owner, under section 2477 of the Code.

5. MECHANICS' LIEN—*Personal Decree Against Owner and General Contractor.*— Although the bill was filed to enforce the lien of a sub-contractor against real estate of the owner, yet if the account is established and the owner admits funds in hand sufficient to pay it, and his readiness to pay, it would be a vain and useless act to subject the property to the payment of the lien, and it is not error to give a personal decree against the owner and general contractor for the amount due.

Appeal from a decree of the Chancery Court of the city of Richmond, rendered July 3, 1893.

*Affirmed.*

Opinion states the case.

*James M. Gregory*, for appellants.

*D. C. Richardson*, for appellees.

RIELY, J., delivered the opinion of the court.

This case involves the validity of the lien of a sub-contractor filed under the mechanics' lien law.

In the month of April, 1890, John F. Bell entered into a contract with Wirt E. Taylor to build for the latter a dwelling house of stone and brick in the city of Richmond. Bell, who was a carpenter, employed James Netherwood to do the stone work and furnish the necessary materials for the fixed sum of $2,350. Netherwood furnished the materials and executed the work as required by the plan and specifications, and to the satisfaction of the architect, the general contractor and the owner. There was no complaint of the manner of its execution. It was only of the delay in doing the work. While the work was being done Netherwood received from Bell the sum of $1,175, and when he had completed his part of the work he applied to Bell for the balance due to him under his contract, and also the amount due for some extra work, amounting in all to $1,220.42. Bell refused payment, because of the loss he alleged that he had sustained by the delay of Netherwood in executing his work. Netherwood thereupon, on the 9th day of June, 1891, and within thirty days after the completion of his work, filed in the clerk's office of the Chancery Court of the said city his mechanics' lien on the said dwelling-house for $1,220.42, with interest thereon from the 22nd of May,

1891, and on the same day gave notice thereof to Taylor.  On the 7th day of October, 1891, Netherwood instituted suit in the said Chancery Court against John F. Bell, Wirt E. Taylor, the wife of Taylor, and Charles A. Rose, trustee in a deed of trust made by Taylor and wife on the 11th day of June, 1891, to enforce the said lien.   John F. Bell and Wirt E. Taylor separately demurred to and answered the bill.   The court overruled the demurrer; and, the cause coming on to be heard on the 3d day of July, 1893, on the bill and answers, the exhibits and the testimony, and it appearing that Taylor owed Bell, when Netherwood gave Taylor notice of having filed his mechanics' lien, the sum of $1,400—a sum more than sufficient to pay the claim of Netherwood—the court held that Netherwood had acquired a valid lien on the said house and lot of land for the sum of $1,220.42, with interest thereon from the 22d day of May, 1891, and decreed that Wirt E. Taylor and John F. Bell pay to James Netherwood the said sum of money and the costs of the suit.   From this decree and the decree overruling the demurrer the appeal in this case was taken.

The demurrer and answers assailed the validity of the mechanics' lien on four several grounds: First, because it did not sufficiently describe the property; second, because the statement of the account was not as full as the law required; third, because the verification of the account was insufficient; and, fourth, because the notice given to the owner was defective.

Section 2475 of the Code declares what persons shall have a lien on any building or structure, and so much land therewith as shall be necessary for the convenient use and enjoyment of the premises, for performing labor about or furnishing materials for the construction, repair, or improvement of such building or structure.

By section 2476 it is provided that a general contractor, in order to perfect such lien, shall, where the building or struc-

ture is within the corporate limits of the city of Richmond, file in the clerk's office of the Chancery Court of the said city "an account showing the amount and character of the work done or the materials furnished, the prices charged therefor, the payments made, if any, and the balance due, verified by the oath of the claimant or his agent, with a statement attached declaring his intention to claim the benefit of said lien, and giving a brief description of the property on which he claims a lien."

And by section 2477 a sub-contractor, in order to perfect such lien, shall comply with the provisions of section 2476, which are as above quoted, so far as they are material to this controversy, and, in addition, give notice, in writing, to the owner of the property or his agent of the amount and character of his claim.

It is further provided by section 2478 that

" No inaccuracy in the account filed, or in the description of the property to be covered by the lien, shall invalidate the lien, if the property can be reasonably identified by the description given, and the account conform substantially to the requirements of the two preceding sections, and is not wilfully false."

1. As to the description given of the property. The object of requiring a description is to inform the owner upon which of his property the lien is claimed, and to give notice thereof to purchasers and creditors, so that they may identify the property, and protect themselves against the lien. "If the property can be reasonably identified by the description given," it is all that the law requires. It is here described as "that certain three-story building, No. ——, situate and being in the city of Richmond, Va., on Grace street, between Shafer and Harrison streets, and the lot or piece of ground and curtilage appurtenant to the said building, fronting on said south line of Grace street 49 feet, and running back 156 feet, more or less, * * * of which Wirt E. Taylor is the owner or reputed owner." The description ought to be and is sufficient

to enable any one to identify the premises intended to be covered by the lien. It is full and accurate, and leaves no doubt as to the property meant. It has been held that a claim filed against "a three-story brick house, situate on the south side of Walnut street, between Eleventh and Twelfth streets, in the city of Philadelphia, of which Harker and Thorn were the owners, or reputed owners" (*Harker* v. *Conrad*, 12 Serg. & R. 301); and against a building "situate on the west side of Thirteenth street, between Vine and James streets, in the county of Philadelphia, belonging to or said to belong to Charles Springer," when in point of fact it was between Callowhill and James, Callowhill street intervening between Vine and James streets (*Springer* v. *Keyser*, 6 Whart. 187); and against "the wharf situated on Battery street, between Pacific and Jackson streets, in San Francisco" (*Hotaling* v. *Cronise*, 2 Cal. 60), gave a sufficiently accurate description.

2. As to the sufficiency of the account. It is contended that the account filed as the basis of the lien does not conform to the requirements of the law. The account is as follows:

1891.

May 22.—To stonework done on Mr. Wirt E. Taylor's residence on Grace street, between Shafer and Harrison streets, in the city of Richmond, and materials furnished, as per agreement with John F. Bell, general contractor for said work, - - - - - - - $2,350.00

Extras: 26 ft. 7 in. curbing, at 90 cts., - - - 23.92

21½ ft. tile at $1.00, - - - - - 21.50

$2,395.42

Credit by cash, - - - - - - - 1,175.00

Balance due, - - - - - - - $1,220.42

It is insisted that the account should have set forth particularly and separately the quantity of the various materials furnished and used in the execution of the stone work, the number of days of labor required to perform the work, and the respective prices of the materials and labor; in short, that it was necessary, in order to perfect the lien, that there should have been an itemized statement of the materials and labor entering into this charge in the account.    The evidence shows that the stone-work was contracted for as an entirety, and for a certain fixed sum.    In such case it was not necessary, if possible, to furnish an itemized statement of the materials or labor.    The account filed states what the work was, and the contract price.    It could not set forth the specific quantity of the different materials, and the prices therefor, or the amount and price of the labor, as is insisted on, when there had been no agreement as to the materials or labor separately, either as to quantity or price.    It sets forth the only contract that was made, and in doing so ''conforms substantially'' to the requirements of the law.    The reason for the strictness required in having the account show the amount and character of the work done or materials furnished, and the prices charged therefor, and the payments made, if any, is to prevent fraud and collusion, and to enable the owner to ascertain and verify the correctness of the demand, and to give definite information to purchasers and incumbrancers.    Where the work is contracted for as an entirety for a specific amount, and this is so set out in the account filed, all the information is given that is needed or can be reasonably required.    It is therefore our conclusion that the account filed in this case is sufficient.    And this has been the course of decision of the courts of last resort of a number of the States having mechanics' lien laws similar to our own.    *Gunther* v. *Bennett*, 72 Md. 384; *Young* v. *Lyman*, 9 Pa. St. 449; *Pool* v. *Wedemeyer*, 56 Tex. 287; *Heston* v. *Martin*, 11 Cal. 41; *France* v. *Woolston*, 4 Houst. 561; *Bank*

v. *Curtis*, 18 Conn. 342; *King* v. *Smith*, 42 Minn. 286; *Leeds* v. *Little*, 42 Minn. 414 and *School District* v. *Howell*, 44 Kan. 285.

The statute of Maryland requires that every such claim shall set forth, among other things, "the amount or sum claimed to be due, and the nature or kind of work, or the kind and amount of materials furnished, and the time when the materials were furnished or the work done." In *Gunther* v. *Bennett, supra*, the court said: "The only objection taken to it [the bill of particulars] is that it does not set forth the amount of materials furnished. This court has frequently held that this requirement must be complied with. But where there is a contract, as here, both to do the work and furnish the materials for a certain sum, it is not required to do more than set out the contract price, and for the obvious reason that, under the contract itself, no amount has been fixed either for the work or materials separately."

Counsel for the appellants rely upon the case of *Shackleford* v. *Beck*, 80 Va., 573, as authority for the contention that an itemized account is required by the statute to be filed in every case. An examination of that case shows that it was unlike this in important features, and that it did not proceed to the extent claimed. There, while the original contract was, it is true, for a sum in gross, there were also charges for extra work. Payments had been made, and the balance due on the account struck. The account filed in that case was merely for this balance. All the items of work, the prices thereof, and the payments made, were omitted from the account, and there was nothing to show how the balance claimed to be due was arrived at. It really gave no information by which its correctness could be verified, but in this case the account filed sets forth what the contract for the stone-work was, and the price agreed to be paid, together with each item of extra work, and the price thereof, and, after apply-

ing the payments made to the general aggregate, ascertains the balance due. The accounts filed in that case and in this are in striking contrast in essential elements. There is nothing in the opinion of the court in *Shackleford* v. *Beck, supra,* from which it can be concluded that, under the law as it then was, and under which that case was decided, an account containing the simple statement of the work done or materials furnished under a contract for a sum in gross would not be held sufficient. Said the court in that case: "But if it be true, as insisted, that where a contract is made in gross for the erection of a building, and supplying the material entering into its construction, the law is complied with by filing a statement of the amount due and owing for the work, it is not applicable in this case, because a considerable portion of the work was done, and material furnished, under a verbal contract or contracts, outside of and not included in the written contract with Beck; all of which are embraced in the itemized account rendered by appellant to Beck, but which account was not filed by appellant in the clerk's office to be recorded as the law requires." 80 Va. 577. This decision was rendered June 25, 1885, when the statute (Code 1873, ch. 115, sec. 4) required that the contractor should file "a true account of the work done or materials furnished." Since then the law has been much modified. The word "true" has been omitted from the requirement of the statute, and a new section incorporated (Code 1887, section 2478), which provides that "no inaccuracy in the account filed  *  *  *  shall invalidate the lien if  *  *  *  the account conform substantially to the requirements" of the statute, "and is not wilfully false."

3. As to the verification of the account. The statute requires that the account shall be verified by the oath of the claimant or his agent. It prescribes no particular form of verification. At the foot of the account filed in this case is appended the certificate of the notary that James Netherwood

personally appeared before him and "made oath to the correct-
ness of the account." This is a sufficient verification under
the statute. The case of *McDonald* v. *Rosengarten*, 134 Ill.
126, relied on by counsel for appellants to show that the
affidavit here was defective, differs materially from this. The
affidavit to the account there was merely that the claimant
"had performed the labor and furnished the materials set forth
in the statement of claim for a lien." Under the statute of
Illinois no lien can be had unless the work shall be done or
materials be furnished within a given time from the commence-
ment of the work, or the delivery of the material. "Time,"
said the court in the case cited above, "is therefore an indis-
pensable element to be considered in the enforcement of any
lien under the statute, and no lien can be enforced disregard-
ing the terms of the statute." The affidavit was, therefore,
held to be fatally defective, because of the omission of the ele-
ment of time, as required by the statute.

4. As to the notice to the owner. It is proved that on the
day the lien was perfected an exact copy of the account as
filed in the clerk's office of the Chancery Court, and of the
statement for the lien attached to the account, was served on
Taylor, the owner. We have already shown that the account
filed was a sufficient compliance with the statute, and it there-
fore follows, as a matter of course, that the notice given to
the owner, as above stated, was sufficient.

It was insisted that the plaintiff was not entitled to enforce
the lien for his full claim because of the delay in executing his
work. When Bell secured the contract for building the house
for Taylor he solicited Netherwood to contract for the stone
work. The plan and specifications required that the stone to
be used in the construction of the building should be obtained
from the Alderson Brownstone Company. Netherwood had
formerly met with much delay in getting stone from this com-

pany, and he hesitated to make an estimate for the work. He was induced to do so by the following letter:

"*Mr. James Netherwood:*

"I have the contract on Taylor's house. Please make out a list of the stone at once, and hand it to Mr. Wilson or Mr. James D. Crump. Mr. West will bind them to furnish you the stone in a certain time, and you to write me a proposition to do the stone-work as per plan and specifications for so much, and agree not to delay the work any time after the stone is delivered to you. I leave the plans in your office. Please return them to me to-night. Yours truly,

"JOHN F. BELL, 1009 W. Main street.

"April 8th, 1890."

Messrs. Wilson and Crump were officers of the Alderson Brownstone Company, and Mr. West was the architect of the house to be built for Mr. Taylor, and furnished the plans and specifications. No time was specified within which Netherwood should complete his work. He only agreed not to delay it at any time after the stone was delivered to him. It is apparent from the evidence that there was great delay in completing the house so as to be occupied by Taylor, and considerable delay in doing the stone-work. We are satisfied, however, from the evidence, that the delay was not the fault of Netherwood, but caused by the delay in delivering to him the stone. He ordered it promptly from the company after receiving from Bell the contract for the work, and did not delay the work after the stone was delivered to him. There was not sufficient ground to abate the amount for which the lien was claimed, and the Chancery Court rightly so held.

It is also assigned as error that, while the bill was filed to enforce the lien against the house and lot of Taylor, the court entered a personal decree against Wirt E. Taylor and John F. Bell for the amount of the lien. The court, by its decree, established the lien for the amount for which it was perfected

Opinion.

under the statute, and entered the decree against Taylor and Bell, as stated. · While it would have been more regular and proper to have decreed that the property be subjected, by a sale, to the payment of the lien, yet, inasmuch as all the parties were properly before the court, and the court ascertained that Bell, the general contractor, owed James Netherwood the amount claimed under the lien, and that Taylor owed Bell more than enough to satisfy the lien, neither of them is injured by the form of the decree, nor has any good cause for complaint. Taylor, in his answer, admits that he holds in his hands the amount of money claimed, to be paid to Bell or otherwise, as the court may direct. It would be a vain and useless act to subject the property to the payment of the lien when the owner already had the money in hand to pay it, and only waited for the court to decide to whom he should pay it. There was no occasion, therefore, for the court to direct that Taylor's property on which the lien was perfected should be sold, but only to decree to whom the money should be paid.

We are therefore of the opinion, that the decree of the Chancery Court, from which the appeal was taken, must be affirmed.

AFFIRMED.