WESTERN IRON WORKS, RESPONDENT, *v.* MONTANA PULP & PAPER COMPANY ET AL., DEFENDANTS; UNION BANK & TRUST COMPANY, APPELLANT.

(No. 1,901.)

(Submitted May 26, 1904. Decided June 22, 1904.)

*Mechanics' Liens—Notice — Description of Property—Sufficiency—Continuing Account — Mortgages — Priority—Corporations—Incorporation — Evidence—Certificate — Certified Copies.*

1. The organization of a corporation under the state law was properly proved by a copy of its certificate of incorporation, certified by the secretary of state, under Code of Civil Procedure, Section 3207.

2. The "property" to be identified under Section 2131, Code of Civil Procedure, is the building or improvement on which the lien is given, and hence a specific description of the "land" is not required.

3. Where, in proceedings to foreclose a mechanic's lien, the record disclosed that the building sought to be charged was monumental in character, easily distinguishable, and known as the paper mill of a particular corporation, and that no other mill or building of like character or description existed in the town, a notice of lien describing the property as "that certain two-story brick mill building, etc., with the lot or lots on which the same is situated, comprising portions of the following," including a general description of certain blocks in the townsite of such town and certain real estate outside the same, was sufficient.

4. Where a notice of a mechanic's lien, after describing the building on which the lien was claimed, added a description of land, in addition to that covered by the building, largely in excess of the statutory amount on which the lien might be foreclosed, such defect was not fatal to the lien; the amount to which the claimant was entitled being subject to adjudication in the proceedings for the enforcement of the lien.

5. In proceedings to foreclose a mechanic's lien, the question whether the materials were furnished and the labor was performed under one general contract, or under separate contracts, is one of fact.

6. In a proceeding to foreclose a mechanic's lien, evidence reviewed, and *held* to sustain a finding that the materials and labor were furnished under a single *contract on an open, continuous account.*

7. Where a mortgage was executed subsequent to the furnishing of materials and labor, for which a lien was claimed on the mortgaged property, the mortgagee, by purchase of the property on foreclosure of the mortgage, did not become a *bona fide* purchaser, but was substituted only to the rights of the mortgagor, and took the property subject to the mechanic's lien, under Code of Civil Procedure, Section 2133.

*Appeal from District Court, Gallatin County; Wm. L. Holloway, Judge.*

ACTION by the Western Iron Works against the Montana Pulp & Paper Company and others. From a judgment in favor of plaintiff, and from an order overruling a motion for a new trial, defendant Union Bank & Trust Company appeals. Affirmed.

*Mr. Eugene B. Hoffman,* and *Messrs. McBride & McBride,* for Appellant.

*Mr. George A. Clark,* and *Mr. J. K. Macdonald,* for Respondent.

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court.

Appeal by the Union Bank & Trust Company from a judgment rendered against it and from an order overruling its motion for a new trial.

The Western Iron Works (hereinafter designated as the "Iron Works") filed a complaint in the district court of Gallatin county against the Montana Pulp & Paper Company (hereinafter designated as the "Paper Company"), the Union Bank & Trust Company (hereinafter designated as the "Trust Company") and the Davis & Weimescary Company, for the purpose of establishing and foreclosing a mechanic's lien upon certain real estate alleged to belong to the Paper Company. The Trust Company was made a party defendant, because it held a mortgage upon the property against which the lien was claimed. The Davis & Weimescary Company was made a party defendant, because it also claimed a mechanic's lien on the same property.

The property against which the lien is claimed is described in the notice of lien as follows: "That certain two-story brick mill building, with all machinery, engines and boilers contained therein, and appurtenances, with the lot or lots upon which the same is situated, comprising portions of the following: Fractional blocks Nos. 24, 25 and 41 of the original town of Manhattan, according to the plat of said town on file in the office of the clerk and recorder of Gallatin county, Montana, and all right and title of said Montana Pulp & Paper Company to Manhattan avenue, between blocks 25 and 41 and First street, and between blocks 24 and 25 and the west half of Second street, and between blocks 25 and 26 and blocks 40 and 41 of said townsite; a tract of land in the S. W. ¼ of the S. E. ¼ of Sec. 3, T. 1 N., R. 3 E., said Gallatin county, beginning at a stone monument, the quarter corner Secs. 3 and 10, of said township and range, running thence at magnetic variation of 19 deg. 42 min. E., north 572 and 85-100 feet, to the northeast corner of fractional block 41 of Manhattan townsite, thence

west on the section line 756 and 61-100 feet, to the place of beginning, all in said Gallatin county, state of Montana."

The complaint alleges: "That the following is a correct description of the property upon which said work and labor was performed, and materials, machinery and fixtures furnished, to-wit:  Block numbered twenty-five (25), in the town of Manhattan, with the improvements thereon."

The judgment describes the property against which the lien is adjudged as follows: "That certain paper mill building, with lots numbered two, three, four, nineteen, twenty, twenty-one and twenty-two, of block twenty-five, Manhattan townsite, Gallatin county, Montana, upon which the same is situated, being the property of defendant Montana Pulp & Paper Company."

The Trust Company filed its separate answer to the complaint, wherein it denied that the Iron Works furnished any materials or fixtures, or performed any labor, "for or upon any of the property described in its complaint, upon an open or continuous account."  "Denies that block numbered twenty-five (25) of the town of Manhattan, with the improvements thereon, is a correct or true description of any property for which plaintiff furnished any material or upon which plaintiff performed any work or labor."  "Denies that on the 15th day of September, 1900, or at any time, or at all, the plaintiff filed in the office of the county clerk and recorder of Gallatin county, Montana, a just or true account of the amount due or owing to the plaintiff for materials furnished or labor performed upon any property described in its said amended complaint, after allowing all credits, or containing a true or correct description of any property permitted by law to be included within a notice or claim of lien, or upon which plaintiff was entitled to or could enforce a claim of lien, as against this defendant."  "Denies that any alleged notice or claim of lien filed by the said plaintiff with the clerk and recorder of Gallatin county, Montana, contained a correct description of any property described in plaintiff's amended complaint, and now sought to be charged with said alleged lien, and denies that the said plaintiff,

at any time mentioned in its said amended complaint, or at all, filed any other or different notice or claim of lien than the so-called notice and claim of lien hereinafter referred to, and a copy of which is hereto annexed, marked 'Exhibit A,' and made a part of this answer." As an affirmative defense it alleges, in substance, that on May 1, 1900, the Paper Company executed to it a mortgage to secure the payment of $60,000, covering all the property described in the Iron Works' notice of lien; that on January 21, 1901, a default having occurred in the terms and conditions of the mortgage, the Trust Company commenced a suit for the foreclosure thereof, which resulted in a decree in its favor in February, 1901; that a sale of the property was had under this decree on March 15, 1901, at which time the Trust Company became the purchaser of the property. The Iron Works was not made a party to this suit for foreclosure, although its notice of lien had been filed long before the institution of that suit. The answer then alleges that the lien claimed is subject to the Trust Company's mortgage and title.

To this answer the Iron Works replied, denying all new matter. Separate answers were also filed by the Paper Company and by the Davis & Weimescary Company, to which replies were made; but the issues raised by these other answers are not material in this case, because the court below rendered a decree in favor of the Iron Works, and none of the parties to the suit below appealed except the Trust Company.

The decision of the four following questions discussed in the brief are determinative of these appeals, and we shall not further refer to the assignments of error: (1) As to the proof of the corporate existence of the Western Iron Works. (2) As to the sufficiency of the notice of the claim of lien with reference to the description of the property therein. (3) As to the character of the account upon which the claim of lien is based. (4) As to the lien being subject to the rights of the Trust Company.

1. As to the corporate character of plaintiff: The record discloses that the Trust Company denied the allegation of the corporate existence of the Iron Works. Upon the trial of the

case the Iron Works offered in evidence a copy of its certificate of incorporation, duly certified by the secretary of state. This was objected to as irrelevant, immaterial and incompetent. The Iron Works was organized as a corporation under the law of 1887. Upon the organization of the state of Montana the secretary of state succeeded to the office of secretary of the territory, and became the legal keeper of all the records of that office. The certificate of incorporation of the Iron Works being of record in that office, it was properly proved by a copy thereof certified by the secretary of state. (Section 3207, Code of Civil Procedure.)

2.   As to the sufficiency of the notice or claim of lien: An investigation of the record discloses the fact that, in the notice or claim of lien, the land upon which the buildings are situated is described very generally, that in the amended complaint it is more specifically described, and in the judgment of the court such description becomes accurate. Appellant claims that the description of the land sought to be subjected to the lien must be definite and certain in the notice or claim of lien; that the land described therein comprises "approximately eighteen acres, containing practically all the ground in the town of Manhattan, and practically all the ground described by metes and bounds outside the town of Manhattan," and that the lien law gives a lien upon only one acre of ground if outside the city, or upon land or lots upon which the building is situated if within the city. It is therefore contended that the description in the notice of lien is not sufficient to support any mechanic's lien upon any property therein mentioned.

It will be noticed that the particular property upon which the lien is claimed is described in the notice of lien as follows: "That certain two-story brick mill building, with all machinery, engines and boilers contained therein, and appurtenances, with the lot or lots upon which the same is situated, comprising portions of the following." Then follows a general description of certain blocks in the townsite of Manhattan and certain real estate outside said townsite.

Section 2131 of the Code of Civil Procedure provides that every one, wishing to avail himself of the benefits of the chapter upon mechanics' liens, must file with the county clerk of the county in which the premises mentioned are situated, and within ninety days after the material or machinery aforesaid has been furnished or the work or labor performed, a true account of the amount due him after allowing all credits, and containing a correct description of the property to be charged with said lien, verified by affidavit; "but any error or mistake in the amount or description does not affect the validity of the lien if the property can be identified by the description."

The purpose of describing the *land* upon which the building or improvements are situated "is demanded only for purposes of identification." (*Brunner* v. *Marks,* 98 Cal. 374, 33 Pac. 265; *North Star Iron Works* v. *Strong,* 33 Minn. 1, 21 N. W. 740; *Drexel* v. *Richards,* 50 Neb. 509, 70 N. W. 23; *Taylor* v. *Netherwood,* 91 Va. 88, 20 S. E. 888.)

Any description which will enable one familiar with the locality to identify the property upon which the lien is claimed is sufficient. (*Hooven, etc. Co.* v. *Featherstone,* 111 Fed. 81; *McNamee* v. *Rauck,* 128 Ind. 59, 27 N. E. 423; *Hughes* v. *Torgerson,,* 96 Ala. 346, 11 South. 209, 16 L. R. A. 600, 38 Am. St. Rep. 105.)

By Section 2130 of the Code of Civil Procedure, a lien is given upon the *building* or *improvement,* in the construction of which the labor or materials were used, and Section 2133 of the Code of Civil Procedure *extends* this lien to the *land* upon which the structure or building is situated. Therefore the *"property"* to be identified under Section 2131 of the Code of Civil Procedure is the building or improvement upon which the lien is given.

The notice of lien in this case describes this property as "that certain two-story brick mill building, * * * with the lot or lots upon which the same is situated," in the town of Manhattan, Gallatin county, Montana. If the description in the notice of lien ended here, it would, under the above decisions,

have answered the purpose required by the statutes. It would be ample to identify the property upon which the lien is claimed. The record discloses that the building is about 300 feet long, 150 feet wide, and 50 feet high, and "is monumental in character, is easily distinguishable as, and is known to be, the paper mill of the Montana Pulp & Paper Company," as the court below aptly said. The record does not disclose that any other mill or building of like character or description exists in the town of Manhattan, but, on the contrary, does disclose that there are no other two-story brick buildings in that vicinity. The appellant introduced no testimony upon the hearing in the court below, except its mortgage, the judgment roll foreclosing the same, and the sheriff's deed of the property to itself upon such foreclosure.

The appellant insists that the remainder of the description of the land set forth in the notice of lien discloses that the land claimed by the lien exceeds the amount allowed by statute, and therefore the description is so indefinite as to avoid the lien claimed. We are of the opinion that this position is unsound. The purpose of the filing of a claim of lien is to notify all parties dealing with the property that a lien is claimed upon it. When the building is identified this notice is given. All persons are charged with the knowledge that the statute gives a lien upon a building, and then extends it to a certain area of the land upon which the building is situated. If the lien claimant were required to specifically describe the land in his notice of lien, he would often, without any fault on his part, be unable to do so. To ascertain the exact description, if outside the limits of a city, would in many instances require a survey, which the owner might object to and prevent. Again, such a requirement, where the structure is outside the limits of a city, would give the right to the lien claimant to select the land in any shape he desired, and the query would then arise whether his selection would not be binding upon the court and all parties to the suit. This might render the statute extremely oppressive upon the landowner. If there was more than one lien claimant, each

might select the ground desired by him, and no two selections might coincide.

If the tract of land described is of greater area than the statute allows, but is sufficient for identification, the amount and specific description against which the lien should be adjudged is a matter to be tried and determined by the court; and, as held in the case of *Oster* v. *Rabeneau,* 46 Mo. 595, the court may, if necessary, appoint a surveyor or commissioner "to make it certain and exact in every respect prior to the judgment of the court." This, we believe, is the safer rule, and the one supported by the weight of authority. (*Smith* v. *Sherman Min. Co.,* 12 Mont. 524, 31 Pac. 72; *North Star Iron Works* v. *Strong,* 33 Minn. 1, 21 N. W. 740; *Evans* v. *Sanford,* 65 Minn. 271, 68 N. W. 21; *Drexel* v. *Richards,* 50 Neb. 509, 70 N. W. 23; *White Lake Lumber Co.* v. *Russell,* 22 Neb. 126, 34 N. W. 104, 3 Am. St. Rep. 262; *Edwards* v. *Derrickson,* 28 N. J. Law, 39; *Derrickson* v. *Edwards,* 29 N. J. Law, 468, 80 Am. Dec. 220; *Shattuck* v. *Beardsley,* 46 Conn. 386; *Whitenack* v. *Noe,* 11 N. J. Eq. 321; *Oster* v. *Rabeneau,* 46 Mo. 595; *Bradish* v. *James,* 83 Mo. 313; *Willamette Steam Mills Co.* v. *Kremer,* 94 Cal. 209, 29 Pac. 633.)

In so far as the granting of the lien is concerned, the statute is remedial in character, and should be liberally construed. In so far, however, as the procedure is concerned by which the lien is claimed and enforced, being pointed out by the statute, such statute must be strictly followed. (*McGlauflin* v. *Wormser,* 28 Mont. 177, 72 Pac. 428.) The Supreme Court of Missouri has well said: "The courts at one time were inclined to hold that enactments for mechanics' liens were in derogation of the common law, and their provisions should therefore be construed strictly against those who sought to avail themselves of their benefits. But the better doctrine now is that these statutes are highly remedial in their nature, and should receive a liberal construction to advance the just and beneficent objects had in view in their passage. Their great aim and purpose is to do substantial justice between the parties, and this should never be

lost sight of in giving them a practical construction." (*De Witt* v. *Smith,* 63 Mo. 263.)

The case under consideration is so clearly distinguishable from that of *Big Blackfoot Milling Co.* v. *Blue Bird Mining Co.,* 19 Mont. 454, 48 Pac. 778, that further comment seems unnecessary.

We are therefore of the opinion that the notice, in so far as the description of the property is concerned, complies with the statute.

3. As to the account: Appellant claims that the account upon which the lien is based "is not a continuous running account; but, on the contrary, the evidence of plaintiff shows affirmatively and conclusively that any material furnished or labor performed was furnished and performed under separate contracts, payments for which were to be due at the end of each month." The question as to whether the materials furnished and labor performed were under one general contract, or under separate contracts, was one of fact. (*Treusch* v. *Shryock,* 51 Md. 162; *Lamb* v. *Hanneman,* 40 Iowa, 41.)

Appellant introduced no evidence as to this question, and therefore its determination must rest entirely upon plaintiff's evidence. The court below, after hearing all the evidence, made the following finding: "That between the 27th day of March, 1900, and the 22d day of June, 1900, the plaintiff furnished materials, machinery and fixtures upon an open and continuous account to the defendant Montana Pulp & Paper Company at its special instance and request." The evidence disclosed in the record fully sustains this finding.

Witness Hoyt testified that "in the first place Mr. Kennedy [manager of the Paper Company] inquired of me personally in regard to prices for materials that he would need in the specifications and construction of the Montana Pulp & Paper Company mill at Manhattan; inquired for prices on labor and prices on materials, such as shafting, pulleys, and prices on labor for blacksmith. * * * This conversation * * * was some time in March, 1900. * * * Mr. Kennedy came

to the office, and met me personally, and asked for these prices, stated who he was, and asked for these prices, and stated at that time there was quite an amount of machinery that was necessary over there, and wanted to know what our facilities were for getting this work out, and I told him we could furnish anything he wanted in our line, and he inquired for our price, and I quoted the prices, and he seemed to think they were high, but, in view of the fact that we could get the work out immediately, that he would let this work and send us an order within a very few days, and additional orders to fill right along. He gave me to believe at that time there was a vast amount of work, and therefore I quoted him quite low prices. * * * There was no understanding in the conversation which I had with Mr. Kennedy as to when the delivery of the goods should cease, nor any understanding as to when the goods should be paid for." The record then discloses the correspondence between the parties, ordering the materials mentioned in the account filed with the notice of lien at different times.

Witness Melcher testified that "Mr. Kennedy called on me that morning relative to the work that we were getting out for the Montana Pulp & Paper Company, more particularly I thought, that morning, to urge the prompt delivery of anything he would want; also to have me promise that any and all things which he would order in the future would be attended to very promptly. That was the principal object of his visit there that morning. He didn't give me any further understanding as to what would be ordered in the future, any more than that there would be thousands of dollars' worth of work required. * * * I was familiar at all times with what was going on at this plant and what was to be the use of it. He gave me to understand what he would want. I knew in a general way what orders would come to me, what would be required to furnish for the building. * * * I was given to understand that they were constructing a pulp and paper mill there, and they would want materials, finished and unfinished materials, at the completion of that mill, which we had the facilities for furnishing.

There was no definite amount stated, nor order made for a certain amount or quantity. Each letter would specify what they wanted at that time. The general proposition didn't specify anything, and there was nothing said about the length of time these orders would continue."

We are satisfied that this testimony is sufficient to support this finding under the following authorities: *Helena Steam Heating & Supply Co.* v. *Wells,* 16 Mont. 65, 40 Pac. 78; *Matthews* v. *Waggenhacuser Brewing Ass'n,* 83 Texas, 604, 19 S. W. 150; *Kizer Lumber Co.* v. *Mosely,* 56 Ark. 544, 20 S. W. 409; *Trustees* v. *Heise,* 44 Md. 453; *Gray* v. *Elbling,* 35 Neb. 278, 53 N. W. 68.

The facts of this case are clearly distinguishable from those in *A. M. Holter Hardware Co.* v. *Ontario Min. Co.,* 24 Mont. 184, 61 Pac. 3; and come clearly within the rule announced in the case of *Helena Steam Heating & Supply Co.* v. *Wells, supra.*

4. As to the question of priority: Counsel for appellant claims that the Trust Company was a *bona fide* purchaser of the property against which the lien is claimed, was misled by the indefinite description in the notice of lien, and that the lien claimed by the Iron Works is subordinate to its claim. The Trust Company became a mortgagee under the mortgage dated May, 1900, which was subsequent to the furnishing of considerable of the material for which the lien is claimed. It foreclosed its mortgage and became the purchaser of the property at the sheriff's sale under the decree of foreclosure. By this procedure it simply became substituted to only the rights, titles and interest that the Paper Company had in the property upon which the lien is claimed, and to no other or greater rights. It simply stood in the shoes of the Paper Company, and was, therefore, not a *bona fide* purchaser, but was the succesor in interest of the Paper Company. It did not allege nor show that it was in fact misled in any way by the description in the notice of lien, but contented itself by simply proving its source of title. Being merely the successor in interest of the Paper Company, it is bound to the same extent and in the same manner as that com-

pany. Under the provisions of Section 2133, Code of Civil Procedure, appellant's mortgage was subject to the Iron Works' lien.

We therefore advise that the judgment and order appealed from be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are affirmed.

MR. JUSTICE HOLLOWAY, being disqualified, takes no part in this decision.