## CIRCUIT COURT OF STAFFORD COUNTY

Blue Ridge Construction Corp.

v.

Stafford Development Group et al.

Case No. (Chancery) 369-90

By JUDGE JAMES W. HALEY, JR.

March 13, 1991

Pursuant to § 43-17.1,[1] landowner Stafford Development Group ("SDG") asks the court to determine the validity of a mechanic's lien filed by Blue Ridge Construction Corp. ("Blue Ridge"). SDG maintains the property description set forth in the recorded memorandum of lien was "over-inclusive,"[2] and as a consequence, the lien should be held invalid in its entirety.

The parties have stipulated the following relevant facts:

1. A contract dated February 21, 1989, between the parties contained the following description of the work to be performed:

---

[1] Section 43-17.1 states in part: "Any party . . . may . . . petition the court . . . to determine the validity of . . . any lien on the property."

[2] This quoted language is taken from Woodington Electric v. Lincoln Savings, 238 Va. 623, 630, 385 S.E.2d 872, 877 (1989).

## The Work

The Contractor shall perform all the Work required by the Contract Documents for . . . .

(A) Access Road Servicing Lots 8 through 19 on preliminary plans dated 12-20-88 as prepared by Rinker-Detwiler & Associates. Road to be constructed with 8" 21A subbase, 3" B-3 Base, and 4 foot shoulders, and V-ditches. Road to be constructed to state specifications.

(B) 8" Waterline Main to be installed in Access Road right of way servicing Lots 8 through 19 . . . .

$0.30 per square foot of Road and Lots serviced.

Lots 8-19 and roadway consist of 57.08 acres or 2,486,404.8 sq. ft.

2. A contract dated August 8, 1989, between the parties contained the following description of the work to be performed:

## The Work of This Contract

The Contractor shall execute the entire Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others, or as follows:

(1) Clearing and Grading of Lots 12, 13, 14 & 15 consisting of 15.37431 acres or 669,704.94 sq. ft.

(2) Sanitary Sewer Mains and Laterals

(3) Lot grading to be within 10 feet of finish road grade and a minimum of 5% slope from front of lot to rear of lot (graded area).

3. At the time when both contracts were executed and at the time the work was performed and up until the mechanic's lien was filed, the "preliminary plans dated 12-20-88 as prepared by Rinker-Detwiler and Associates" were not of record in the Clerk's Office of Stafford County. Rather, the subject property owned by SDG and

recorded in the Clerk's Office was set forth in a lengthy metes and bounds description containing 79.675 acres less and except off conveyances of 1.9748 acres, 8.880 acres, and 23.2 acres.

4. Blue Ridge filed its mechanic's lien on April 26, 1990, and described the property subject[3] to the lien as follows:

> The property subject to this lien is more particularly shown and outlined as Lots 1, 2, 3, 4, 5, 6, 7, 12, 13, 14, 15 and 16 on an unrecorded Preliminary Plan of Wyche Industrial Park attached hereto as Attachment 1.
>
> The property subject to this lien is also identified and described as follows: (here followed the lengthy metes and bounds description referred to above.)

5. The Attachment 1 recorded with this memorandum of mechanic's lien was "the preliminary plans" set forth in the two contracts (hereinafter "the plans").

The plans show a subdivision of SDG's property into 18 lots, including lot numbers, dimensions, and square footage. They show access roads with dimensions and a curve table, as well as pertinent topographical features, zoning data, and a vicinity map. Though a "preliminary plan," the Director of Utilities and the Chairman of the Planning Commission signed and approved the same on April 27, 1989, and on May 3, 1989, respectively.

6. No work was done by Blue Ridge on or related to Lots 1 through 7 of the plans. Lots 1 through 7 on the plans are serviced by an access road different from that which services Lots 8 through 19.

---

[3] Section 43-4 requires a lienor to give "a brief description of the property on which he claims a lien . . ."

Section 43-5 sets forth a suggested memorandum which includes "4. Brief description and location of real property . . ."

Section 43-15 states in part: "No inaccuracy . . . in the description of the property . . . shall invalidate the lien, if the property can be reasonably identified by the description given . . ."

In *United Masonry v. Jefferson Mews*, 218 Va. 360, 378, 237 S.E.2d 171, 182 (1977), the court stated that the object of the law of mechanic's liens:

> is to give those who, by their labor and material, have enhanced the value of the building the security of a lien thereon to the extent they have added to its value, but not to give a lien therefor upon property not benefited by such labor and materials.

*See also, Gilmer v. Ryan*, 95 Va. 494, 28 S.E. 875 (1898).

The court in *Rosser v. Cole*, 237 Va. 572, 576, 379 S.E.2d 323, 325 (1989), stated:

> A mechanic's lien is purely a creature of statute; it must have its foundation in a contract, with which it must correspond. *Sergeant et ux. v. Denby et al.*, 87 Va. 206, 208, 12 S.E. 402 (1890). Being in derogation of the common law, the statutes relating to the existence and perfection of a mechanic's lien are strictly construed. *Clement v. Adams Bros. - Paynes Co.*, 113 Va. 547, 552, 75 S.E. 294, 296 (1912). (Emphasis in original.)

*See also, Woodington Electric v. Lincoln Savings*, 238 Va. 623, 630, 385 S.E.2d 872, 877 (1989); *United Masonry, Inc. v. Riggs National Bank*, 233 Va. 476, 480, 357 S.E.2d 509, 512 (1987); *Weaver v. Harland Corporation*, 176 Va. 224, 10 S.E.2d 547 (1940), *In re Thomas A. Cary, Inc.*, 412 F. Supp. 667, 671-675 (E.D. Va. 1976).

With respect to the sufficiency of the description of the real property, the court in *Penrod & Stauffer v. Metro Printing*, 229 Va. 150, 152-153, 326 S.E.2d 662, 664 (1985) stated:

> A memorandum of mechanic's lien must contain "a brief description of the property" on which the lien is claimed. Code § 43-4. See also Code Section 43-7. The purpose of the description is to enable an owner, purchaser, or creditor to identify the property on which the lien is

claimed. *Taylor v. Netherwood*, 91 Va. 88, 91, 20 S.E. 888, 889 (1895). If the property can be "reasonably identified," the description is sufficient. Id.: Code § 43-15.

In *Taylor*, the property was described as:

"[T]hat certain three-story building, No. ---, situate and being in the city of Richmond, Va., on Grace Street, between Shafer and Harrison Streets, and the lot or piece of ground a curtilage appurtenant to the said building, fronting on said south line of Grace Street 49 feet, and running back 156 feet, more or less . . . of which Wirt E. Taylor is the owner or reputed owner."

91 Va. at 91, 20 S.E. at 889. We found the description full and accurate, and held that it sufficiently identified the property. Id. at 92, 20 S.E. at 889.

Here, the building is identified as a "pre-engineered metal building addition" to an existing structure. The property is thereafter described as "the aforementioned demised premises and land thereunder . . . located at 1200 South Sterling Boulevard, Sterling, Virginia, and which is more fully described at Book 728, Page 611 of the Land Records of Loudoun County."

The street address gives the property's location, and a "full and accurate" description is readily obtainable from the referenced deed book. Indeed, the description in the present case is clearer and more exact than that approved in *Taylor*. We conclude, therefore, that the court erred when it sustained the first demurrer and dismissed the mechanic's lien.

See also, *Francis, et al. v. Hotel Rueger*, 125 Va. 106, 99 S.E. 690 (1919).

It is clear from the foregoing that the "brief descrip-

tion" required of a lienor is not the same as a "legal description" of the property.[4]

The scope of the work under both of Blue Ridge's contracts included clearing and grading, installing sanitary sewer mains and laterals, installing a waterline main, and building an access road.

For such work, Blue Ridge's lien rights could arise pursuant to § 43-3(a), § 43-3(b), and/or § 43-2. Section 43-3(b) requires a person installing "streets, sanitary sewers, or waterlines for the purpose of providing access or service to the individual lots in a development . . ." to apportion its lien among the lots. Blue Ridge did not do so and accordingly may not rely upon § 43-3(b). *Rosser v. Cole*, 237 Va. 572, 577, 379 S.E.2d 323, 326-327 (1989).

To the extent that Blue Ridge's work involved construction of an access road, it acquired no lien rights pursuant to § 43-3(a) "beyond the confines of the roads or streets which it worked," that is, "no extraterritorial lien." *Rosser*, 237 Va. at 578, 379 S.E.2d at 326 & 327. Consequently, Blue Ridge's lien rights for non-street work must arise under § 43-2. But "the liberalizing provisions of § 43-2 have never extended a contractor's lien rights to land on which he did not work." *Rosser*, 237 Va. at 577, 379 S.E.2d at 326. Blue Ridge has conceded it did no work on or related to Lots 1 through 7 which it included in its property description and on which it has asserted its lien.

In *Woodington Electric v. Lincoln Savings*, 238 Va. 623, 634, 385 S.E.2d 872, 880 (1989), the court stated:

---

[4] In Virginia and West Virginia Mechanics' and Materialmen's Liens, Joseph E. Ulrich, sect. 2-6(b), p. 28 (1985 Ed.), the commentator writes:

Description of the property

In describing the property to be charged, the cases have indicated that a reasonable identification will suffice. So long as the description gives potential purchasers and other lien creditors notice of the existence of the lien, the Act is satisfied. If the land is misdescribed, no lien can arise.

We hold, on the basis of *United Masonry* and *Rosser*, that where, as here, a mechanic files a memorandum of mechanic's lien against two or more parcels but has not worked on all the parcels and where the mechanic attempts to enforce that lien against the several properties, that lien must be declared invalid in its entirety. Mechanic's lien law in Virginia will not permit a claimant to file an over-inclusive lien and then leave it to the trial court to excise any excess property. It is the mechanic's duty to place his lien upon the property on which he worked and no more.[5]

Blue Ridge maintains that the instant case is distinguished from *United Masonry, Rosser,* and *Woodington* in that:

A. In these three cases at the time the lien was filed, the owner had theretofore put to record a master deed of condominium, or a final subdivision plan, or owned separate parcels of real estate from that on which the lienor actually worked but which were included in the property description, and

B. The plans here were unrecorded (until Blue Ridge recorded them) were only preliminary, were not finally approved by the County, were subject to change, and could not be the basis of an acceptable conveyance to a third party, and

C. The property encompassed by the plans is shown on the county tax map as a single parcel and is assessed as a single parcel by the Commissioner of Revenue.

No Virginia case was discovered on the precise issues here raised. In *Suburban Improvement Co. v. Scott Lumber*

---

[5] Section 43-23.1 requires forfeiture of lien rights where the lienor "with intent to mislead" (formerly, "knowingly") includes property in his memorandum on which he did not work. See First National Bank v. Roy N. Ford Co., 219 Va. 942, 252 S.E.2d 354 (1979); Mills v. Moore's Super Stores, 217 Va. 276, 227 S.E.2d 719 (1976). There is no evidence before the court that Blue Ridge acted with such intent. In any event, the result is the same. The lien is entirely invalid, whether the lienor acts with the quoted intent or describes the property negligently or mistakenly. See Woodington, 238 Va. at 627, 385 S.E.2d at 875 (1989).

*Co.,* 59 F.2d 711, 716 (4th Cir. 1932), 87 A.L.R. 555, *cert. den.,* 287 U.S. 660, 77 L. Ed. 569, 53 S. Ct. 123, where the lienor had described an entire parcel when he had worked upon a single lot in a recorded subdivision of the parcel, the court stated:

> The lien as filed by defendant covered too much property and was void insofar as it professed to cover property beyond the lot upon which the residence stood. As to property beyond this, it constituted a cloud upon title, to remove which complainant was entitled to invoke the aid of equity. 51 C.J. 159; *Sheets v. Prosser,* 16 N.D. 180, 112 N.W. 72; *Johnston v. Kramer Bros. & Co.* (D.C.) 203 F. 733, 742. The lien is not invalid, however, as to the building repaired and the lot upon which it is situate.

Such a decision does not here aid Blue Ridge because, as the court in *Woodington* noted above, it is not for "the trial court to excise any excess property," and, further, as the court in *Wallace v. Brumback,* 177 Va. 36, 40, 12 S.E.2d 801, 805 (1941), stated, unlike the West Virginia statutes and case law, in Virginia:

> the . . . existence . . . of the lien . . . rests upon compliance with the statute and not upon equitable principles. *Feuchtenberger v. Williamson,* 137 Va. 578, 584, 585, 120 S.E. 257; *Coleman v. Pearman,* 159 Va. 72, 79, 80, 165 S.E. 371.

In *Chicago Title and Trust Company v. D. & W. Equipment,* 142 Ill. App. 3d 601, 491 N.E.2d 1294 (1986), an excavator entered into a contract to do work on three parcels of land recited in the contract and then of record described by metes and bounds. Between the time the contract was signed and the lien memorandum filed, a final subdivision plat covering the three parcels had been put to record. In his memorandum, the excavator described the property by the metes and bounds.

Noting that a mechanic's lien is inchoate, as is the case in Virginia (*see, DeWitt v. Coffey,* 150 Va. 365,

143 S.E. 710 (1928)) and develops viability at the time of recording, the Illinois court upheld the trial court's grant of summary judgment against the lienor and stated:

> We believe that a strict statutory construction of the Act's wording requiring "a sufficiently correct description of the lot, lots or tract of land to identify the same" requires that a lien claimant must use the *legal description* of the property as indicated by plat when such a plat has been recorded . . .[6] (Emphasis supplied).

As was quoted above, Justice Charles S. Russell in his opinion in *Rosser v. Cole*, purposely emphasized that a mechanic's lien has "its foundation in contract, *with which it must correspond.*"

For purposes of a memorandum of mechanic's lien, property need only be "briefly," not legally, described. The description of the property set forth in the plans upon which Blue Ridge was to work was defined to its, and SDG's, satisfaction in two contracts between the parties. When Blue Ridge filed its memorandum of mechanic's lien, it in part described the property on which it sought a lien by recording the plans, and by so doing, could have limited its lien to the property on which it had

---

[6] The Illinois court notes its holding is especially appropriate where third parties' rights are involved. In Weaver v. Harland Corporation, 176 Va. 224, 225, 10 S.E.2d 547, 548 (1940), the court was concerned with the effect of a release of certain lots upon remaining lots covered by an unapportioned mechanic's lien where priority of encumbrances was a factor and third parties' interests were involved. The court stated: "we think, the weight of authority and the force of reason, sustain the view that the release of a portion of the properties, under the circumstances of this case, embraced by the lien, precludes its successful assertion against the remainder. This is only true where the interests of other lien creditors are affected. It would not be so in the case of the owner and the lienor." In the instant case, third and necessary parties, including four trustees under deeds of trust, two noteholders, and another lienor, are joined in the underlying Bill to Enforce Mechanic's Lien. See Walt Robbins, Inc. v. Damon Corp., 232 Va. 43, 47-48, 348 S.E.2d 223, 227 (1986); Mendenhall v. Cooper, 239 Va. 71, 75, 387 S.E.2d 471, 474 (1990).

worked and had improved. It failed to do so, and accordingly, its memorandum of mechanic's lien is invalid.

Counsel for SDG shall prepare and circulate an order reflecting the court's rulings, which order shall order the memorandum or notice of lien recorded in Deed Book 732 at page 152 be forthwith removed.

April 12, 1991

In a written opinion dated March 13, 1991,[7] this court held invalid in its entirety an "over-inclusive"[8] unapportioned mechanic's lien filed by a general contractor.[9] Specifically, lienor had described a portion of the property covered by its lien as Lots 1 through 7 shown on a preliminary plan of Wyche Industrial Park, which plan lienor recorded with that memorandum and on which it conceded it did no work. In Footnote 2 of *Woodington Electric v. Lincoln Savings*, 238 Va. 623, 634, 385 S.E.2d 872, 880 (1989), the court stated:

> We express no opinion as to the outcome in a situation where a mechanic files an over-inclusive memorandum yet voluntarily attempts to amend to limit the lien's reach to the *proper amount of property.*

Relying upon this quoted footnote, lienor moves the court to hold invalid *only* that portion of the property described in its lien on which it did no work and, as a consequence, leave valid its lien on Lots 8 through 19 of Wyche Industrial Park on which it did work.

Lienor filed its memorandum of lien on April 26, 1990, and a bill to enforce the same on June 4, 1990. It was landowner, not lienor, who filed a petition pursuant

---

[7] That opinion is to be considered as incorporated in the instant one.

[8] This quoted language is taken from Woodington Electric v. Lincoln Savings, 238 Va. 623, 630, 385 S.E.2d 872, 877 (1989).

[9] A "general contractor" is one who contracts "directly with the owner . . . ." Section 43-1.

to § 43-17.1 to determine the validity of the lien. Oral argument was heard on the matter on March 6, 1991, and, as noted above, this court issued an opinion on March 13, 1991.[10] The motion with which the instant opinion is concerned was filed on April 5, 1991.[11]

The footnote quoted above presumes the existence of a lienor who "voluntarily" amends the scope of its purported lien. In the instant case, lienor neither limited nor attempted to limit its lien until after the court held the same invalid in its entirety, a period of almost one year having elapsed since the memorandum of lien had been recorded. Such action is hardly voluntary.

It is clear from the text of the quoted footnote that the Supreme Court has not yet addressed the precise question as to the status of the remainder of a lien, a portion of which a lienor has voluntarily limited.

In a bill to enforce a mechanic's lien, the court in *Mendenhall v. Cooper*, 239 Va. 71, 75, 387 S.E.2d 471, 474 (1990), stated:

> Consequently, we must determine whether the new defendants in the present case are necessary parties. We define "necessary parties" broadly: "Where an individual is in the actual enjoyment of the subject matter, or has an interest in it, either in possession or expectancy, which is likely either to be defeated or diminished by the plaintiff's claim, in such case he has an immediate interest in resisting the demand, and all persons who have such immediate interests are necessary parties to the suit." *Raney v. Four Thirty Seven Land Co.*, 233 Va. 513, 519-20, 357 S.E.2d 733, 736 (1987) (quoting *Gaddess v. Norris*, 102 Va. 625, 630, 46 S.E. 905, 907 (1904) (citation omitted)). Moreover, we have held that both the trustee and the named benefici-

[10] No final order encompassing the March 13, 1991, opinion has as yet been entered.

[11] In oral argument on March 6, 1991, counsel for lienor as a fallback position asked the court to limit any invalidity concerning the lien to property on which it did no work.

ary of an antecedent deed of trust are necessary parties in a suit to enforce a mechanic's lien. *Walt Robbins, Inc.*, 232 Va. at 47-48, 348 S.E.2d at 227. *See also* Code § 55-66.1.

In *Weaver v. Harland Corporation*, 176 Va. 224, 227-228, 10 S.E.2d 547, 550 (1940), the court was concerned with the effect of a release of certain lots upon remaining lots covered by an unapportioned mechanic's lien where priority of encumbrances was a factor and third parties' interests were involved. The court noted:

> We are aware of the fact that the authorities are not agreed as to this, but, we think, the weight of authority and the force of reason sustain the view that the release of a portion of the properties, under the circumstances of this case, embraced by the lien, precludes its successful assertion against the remainder. This is only true where the interests of other lien creditors are affected. It would not be so in the case of the owner and the lienor. It will be readily seen that if it were not so, the mechanics lien lienors could so shift their liens as to unduly burden some of the lien subjects and relieve others, to the extent of imperiling the interests of other lien creditors which would not be consonant with the intent and spirit of the statute and would be offensive to good conscience and equity.

In the instant case, four trustees under the deeds of trust, two noteholders, and another lienor were properly joined in the bill to enforce the mechanic's lien.

In light of the foregoing, it is the opinion of this court that a lienor may not voluntarily limit the reach of an overly-inclusive lien where third parties are necessary parties to a bill to enforce the same.

Lienor's motion to limit is denied.