## DOIS I. ROSSER, JR., ET AL.

### v.

## ROBERT A. COLE

Record No. 870330

April 21, 1989

Present: All the Justices

*David S. Hudson* for appellants.
*George H. Guy, Jr.* for appellee.

RUSSELL, J., delivered the opinion of the Court.

This appeal requires us to determine the validity of a mechanic's lien claimed by a builder of roads, purporting to affect land subdivided into lots.

Dois I. Rosser, Jr., recorded a plat dated September 12, 1985, subdividing into 77 lots Lee's Neck Farm, a tract of approximately 450 acres in Gloucester County. The lots were served by a network of subdivision streets. In a contract dated October 7, 1985, with a March 1986 addendum, Robert A. Cole, trading as "Robert Cole Excavating," agreed with Rosser's agent to "perform all the labor necessary for the completion of approximately 16,400 feet of general road clearing and grading to a width of 30 feet clearing and 20 foot wide grading from ditch to ditch" at Lee's Neck Farm for the total price of $59,720. The contract specified that materials "such as road pipe, gravel, base materials, stone, straw or grass seed" were not included, but that the "cost includes labor for installing culvert as needed on roads."

On August 28, 1986, Cole filed a memorandum of mechanic's lien in the clerk's office of the court below. Employing the form suggested by Code § 43-5, the lien claimant named Rosser as owner of the realty and asserted that $14,909 was due. The memorandum also recited, "Type of materials or services furnished: Road clearing and grading." The memorandum also showed,

"Type of structure on which work done: Timber, raw land and open fields." The property description purported to cover the entire 450-acre tract, but excepted nine numbered lots by reference to the plat. Cole did not contend that he had done any work on any part of the 77 lots.

In November 1986, Dois and Shirley Rosser, as owners of the realty, filed the present proceeding by petition under Code § 43-17.1, attacking the validity of the perfected lien. That statute provides:

> "Any party, having an interest in real property against which a lien has been filed, may, upon a showing of good cause, petition the court of equity having jurisdiction wherein the building, structure, other property, or railroad is located to hold a hearing to determine the validity of any perfected lien on the property. After reasonable notice to the lien claimant and any party to whom the benefit of the lien would inure and who has given notice as provided in § 43-18 of the Code of Virginia, the court shall hold a hearing and determine the validity of the lien. If the court finds that the lien is invalid, it shall forthwith order that the memorandum or notice of lien be removed from record."

After a hearing, the trial court dismissed the petition, ruling the mechanic's lien to be valid. We awarded the owners this appeal from the January 1987 dismissal order.

On appeal, the owners contend that the contractor's lien is invalid because it fails to apportion the amount claimed among the individual lots as required by Code § 43-3(b). As pertinent here, § 43-3 provides:

> "(a) All persons performing labor or furnishing materials of the value of fifty dollars or more, for the construction, removal, repair or improvement of any building or structure permanently annexed to the freehold . . . shall have a lien, if perfected as hereinafter provided, upon such building or structure, and so much land therewith as shall be necessary for the convenient use and enjoyment thereof . . . for the work done and materials furnished.
>
> . . . .
>
> (b) Any person providing labor or materials for the installation of streets, sanitary sewers or water lines for the purpose

of providing access or service to the individual lots in a development . . . shall have a lien on each individual lot in the development for that fractional part of the total cost of such labor or materials as is obtained by using 'one' as the numerator and the number of lots as the denominator . . . provided, however, no such lien shall be valid as to any lot . . . unless the person providing such labor or materials shall, prior to the sale of such lot . . . file with the clerk of the circuit court of the jurisdiction in which such land lies a document setting forth a full disclosure of the nature of the lien to be claimed, the amount claimed against each lot . . . and a description of the development . . . and shall, thereafter, comply with all other applicable provisions of this chapter.

Nothing contained herein shall be construed to prevent the filing of a mechanic's lien under the provisions of paragraph (a) hereof."

Code § 43-2 provides:

"For the purpose of this chapter, a well, excavation, sidewalk, driveway, pavement, parking lot, retaining wall, curb and/or gutter, breakwater (either salt or fresh water), water system, drainage structure, filtering system (including septic or waste disposal systems) or swimming pool shall be deemed a structure permanently annexed to the freehold, and all shrubbery, earth, sod, sand, gravel, brick, stone, tile, pipe or other materials, together with the reasonable rental or use value of equipment and any surveying, grading, clearing or earth moving required for the improvement of the grounds upon which such building or structure is situated shall be deemed to be materials furnished for the improvement of such building or structure and permanently annexed to the freehold."

The owners argue that the specific provisions of § 43-3(b) control, because the contractor's work was performed "for the installation of streets . . . providing access . . . to the individual lots in a development," according to the statutory language. The owners contend that subsection (b) provides that the claimant "shall have a lien on each individual lot," but not a blanket lien for the total value of his services upon the entire property owned by the "devel-

oper." The owners then point out that the contractor failed to apportion his claim among the lots as subsection (b) requires.

The contractor argues that subsection (a), not subsection (b), of § 43-3 applies under these circumstances to permit the filing of a memorandum for a blanket lien. He says that he performed labor for the construction of a "structure permanently annexed to the freehold," as that term is defined in § 43-2. He relies on the portion of the definition which states that "excavation" shall be deemed a "structure permanently annexed to the freehold." He also relies on the portion which states that "any . . . grading, clearing or earth moving required for the improvement of the grounds upon which such . . . structure is situated shall be deemed to be materials . . . permanently annexed to the freehold."

We agree with the owner that subsection (b) is inapplicable because of the contractor's failure to apportion his claim among the lots. We further agree with the contractor that his lien rights are entirely dependent upon the operation of subsection (a), but we reach a different conclusion.

A mechanic's lien is purely a creature of statute; it must have its foundation in a contract, *with which it must correspond. Sergeant et ux.* v. *Denby et al.,* 87 Va. 206, 208, 12 S.E. 402, 402 (1890). Being in derogation of the common law, the statutes relating to the existence and perfection of a mechanic's lien are strictly construed. *Clement* v. *Adams Bros.-Paynes Co.,* 113 Va. 547, 552, 75 S.E. 294, 296 (1912).

The historic provision of law which creates the right to a mechanic's lien has been with us since 1842. In its present form, it provides, in pertinent part: "All persons performing labor . . . for the construction, removal, repair or improvement of any building or structure permanently annexed to the freehold . . . shall have a lien, if perfected as hereinafter provided, *upon such building or structure, and so much land therewith as shall be necessary for the convenient use and enjoyment thereof . . . .*" Code § 43-3(a) (emphasis added).

Because the claimant did no work on any part of the lots, his lien rights would not extend to them under the provisions of Code § 43-3(a) unless his rights are extended by other provisions of law. Historically, one who constructed a barn or other out-building on a farm could perfect a lien upon the structure he had built, and so much land as the enforcing court of equity might apportion

to it for "the convenient use and enjoyment thereof," but would not have a lien on the farmhouse, other buildings upon which he had done no work, or upon the residue of the farm itself. In the case of a dwelling erected on an urban lot, lien rights on the dwelling would routinely extend to the entire lot, because all the land would be "necessary for the convenient use and enjoyment" of the dwelling. *Pairo* v. *Bethell*, 75 Va. 825, 832 (1881).

Still, there remained many kinds of construction work which were unprotected by any lien rights because they did not contribute to any "building or structure permanently annexed to the freehold." Such unprotected trades included those who did clearing, excavation, and grading. To remedy that omission, the General Assembly, beginning in 1922, enacted a series of laws extending lien rights to those who constructed wells, excavations, sidewalks, driveways,* parking lots, pavements, retaining walls, curbs, gutters, breakwaters, water systems, drainage structures, filtering systems, and swimming pools. Subdivision streets are conspicuous by their absence. Code § 43-2. That section quoted above, gives lien rights to the builders of the facilities listed therein by expressly providing that such a facility "shall be deemed a structure permanently annexed to the freehold." That incorporation of the time-honored language of § 43-3(a) makes those facilities, and the "land necessary for the convenient use and enjoyment thereof," the subject of lien rights.

Nevertheless, the liberalizing provisions of Code § 43-2 have never extended a contractor's lien rights to land upon which he did no work. That section expressly provides that shrubbery, building materials, equipment rental, and "any surveying, grading, clearing or earth moving required for the improvement of the *grounds upon which such building or structure is situated* shall be *deemed to be materials furnished for the improvement of such building or structure and permanently annexed to the freehold. Id.* (emphasis added). The framers of the statutory scheme were careful not to extend a builder's lien rights beyond the "building or structure" upon which he had worked.

As a result of these limitations, one who built roads or streets in a subdivision had no lien rights upon the subdivision lots, or the buildings thereon, until the General Assembly enacted Code § 43-

---

* The claimant in the present case had no contract for the construction of sidewalks or driveways.

3(b) in 1979 (1979 Acts c. 360). That section, as we have seen, gives a subdivision road-builder a lien on each lot, provided he apportions his lien so as to allocate to each lot its proportionate share of his claim, and provided he further files a document with the clerk setting forth the nature and amount of his claim against each lot before such lot is sold. This is the first and only example in the mechanic's lien statutes of a provision for an extraterritorial lien, and it is carefully conditioned to minimize danger to purchasers without notice and other innocent third parties.

The flaw in the position asserted by the contractor in the present case is that his claim would constitute a secret, floating lien, not recorded in the chains of title to the individual lots. Lenders, general contractors, and bona fide purchasers are likely to be unaware of such a claim. Such parties may protect themselves from the claims of those who have worked upon the lots in which they have an interest by obtaining the customary releases of liens from those known to have done the work. But they may well be unaware of the potential claim of a road-builder working on a distant part of the tract.

The General Assembly has carefully avoided that danger by the preconditions to the acquisition of an extraterritorial lien required by Code § 43-3(b). The contractor in the present case, not having met those preconditions, is limited to the traditional lien rights conferred by § 43-3(a). That section, as we have seen, grants him no lien rights beyond the confines of the roads or streets on which he worked.

Because the contractor's memorandum of mechanic's lien failed to correspond to his contract, failed to describe the land and improvements upon which his lien rights existed, and purported to cover property to which his lien rights did not extend, it was invalid. The court erred in refusing the relief to which the owners were entitled under Code § 43-17.1.

Accordingly, we will reverse the judgment and enter final judgment here, ordering that the memorandum of lien be "removed from record" pursuant to Code § 43-17.1.

*Reversed and final judgment.*

COMPTON, J., dissenting.

The majority does not address the issues debated by the parties, but discusses issues never raised in the case. The landowners, on brief, state that "the only question presented on appeal" is whether "a Mechanic's Lien claimed for 'road clearing and grading' on 'timber, raw land and open fields' which have been subdivided into individual unimproved lots on a recorded plat, *which lien fails to apportion the claim among the individual lots benefitted by such roads as required by Virginia Code Section 43-3(b)*, [is] valid and enforceable?" (emphasis added). The landowners argue that subsection (b) applies and that no lien in favor of the claimant "is created by Section 43-3(a) because *there is no building or other structure permanently annexed to the freehold located anywhere within the boundaries of the sixty-six lots upon which Cole claims his lien*" (footnote omitted) (emphasis added).

Disagreeing with the landowners, the majority decides that subsection (b) is not applicable, noting that the claimant failed to apportion his lien as required by that subsection.

Yet, the majority concludes that subsection (a) effectively gives the claimant a lien on lands not covered by this contract. That argument has never been advanced by the landowners. The landowners merely have argued that no lien is created by subsection (a) because there "is no building or other structure permanently annexed" to the realty located anywhere within the boundaries of the lots upon which the contractor claims its lien. But, Code § 43-2 states that "excavation" shall be deemed a "structure permanently annexed to the freehold," clearly authorizing a lien on the lots under these circumstances.

This case involves a single contract for the entire work to be performed on the tract as a whole; there are no provisions in the agreement allocating a specific portion of the contract price to any individual lot. Second, this is a contest between the owners and the general contractor; no interests of third parties are involved.

Under these circumstances, the law is settled that a joint or blanket lien is valid and the lien claimant has no duty to apportion in the memorandum the amount of the claim. *Sergeant v. Denby*, 87 Va. 206, 12 S.E. 402 (1890). *See United Virginia Mortgage Corp. v. Haines, Inc.*, 221 Va. 1047, 1050, 277 S.E.2d 187, 189 (1981); *PIC Company v. First Union Bank*, 218 Va. 915, 920, 241 S.E.2d 804, 807 (1978); *Weaver v. Harland Corp.*, 176 Va. 224, 226-27, 234, 10 S.E.2d 547, 548, 551 (1940). Thus, the contrac-

tor's lien for this work properly was perfected under § 43-3(a).

For these reasons, I would affirm the judgment of the trial court.