WOODINGTON ELECTRIC, INC.

v.

LINCOLN SAVINGS AND LOAN ASSOCIATION, ET AL.

Record No. 871399

WATERFRONT MARINE CONSTRUCTION, INC.

v.

LINCOLN SAVINGS AND LOAN ASSOCIATION, ET AL.

Record No. 871401

JAMES DUFFY, T/A DUFFY ROOFING COMPANY

v.

STEPHEN C. ST. JOHN, TRUSTEE, ET AL.

Record No. 881255

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

---

* Justice Thomas prepared and the Court adopted the opinion in this case prior to the effective date of his resignation, November 1, 1989.

624

M. Richard Epps (*Epps & Brown*, on brief), for appellant. (Record No. 871339)

David K. Sutelan (*Jeffrey D. Tarkington; J. James Basgier, Jr.; Breeden, MacMillan & Green; Steinhilber & Basgier*, on brief), for appellees. (Record No. 871339)

J. Brian Donnelly (*Vincent R. Olivieri; Anderson, Lee & Norris*, on brief), for appellant. (Record No. 871401

David K. Sutelan (*Jeffrey D. Tarkington; J. James Basgier, Jr.; Breeden, MacMillan & Green; Steinhilber & Basgier*, on brief), for appellees. (Record No. 871401)

Gary P. Arsenault (*Cabell C. Mercer; Michael E. Gary; Courtney E. Mercey; Donald C. Grey; Mercer, Grey & Arsenault*, on briefs), for appellant. (Record No. 881255)

David K. Sutelan (*Jeffrey D. Tarkington; Breeden, MacMillan & Green*, on brief), for appellees. (Record No. 881255)

Justice Thomas delivered the opinion of the Court.

These three mechanics' lien cases concern a single narrow issue: whether an attempt by a mechanic to assert one lien against several parcels of land, where the mechanic did not work on or add value to all the parcels, renders the entire lien invalid. In each case, the trial court sustained a demurrer.[1]

---

[1] In the *Woodington* and *Waterfront Marine* cases, the trial court's ruling sustaining a demurrer came after the parties had engaged in discovery and participated in a hearing.

## Woodington's Case

Blue Phoenix Corporation formerly known as Baymark Companies, Inc. and/or Mid-Atlantic Building Corporation, and/or Baymark Builders, Inc. (hereinafter collectively referred to as Blue Phoenix) owned nine parcels of land in Norfolk. Blue Phoenix hired Woodington Electric, Inc. (Woodington) to supply labor and materials for electrical work to be used in and about and incorporated into improvements being constructed by Blue Phoenix on its property. The improvements consisted of marina facilities, a clubhouse, and a restaurant.

On September 6, 1984, after entering the aforementioned agreement with Woodington, Blue Phoenix filed a "Declaration of Baymark Yacht Haven, A Condominium." Only a portion of Blue Phoenix's nine parcels of land were made part of the condominium regime. All the labor and material supplied by Woodington was limited to condominium property.

On September 21, 1984, fifteen days after Blue Phoenix established its condominium regime, Woodington filed a memorandum of mechanic's lien claiming $52,000 with interest thereon at 1.5 percent per month for the labor and material. Woodington listed Blue Phoenix as the owner. The structure on which work had been done or materials supplied was identified as a "boat slip marina or clubhouse." In its brief description of the property, Woodington referred to a deed which described Blue Phoenix's property as the nine parcels that existed prior to the creation of the condominium.

On March 19, 1985, Woodington filed its bill of complaint to enforce its mechanic's lien. There, it described in two ways the property against which a lien was sought. In the body of paragraph 3 of its bill, it described the property as "10.877 acres of land located in the City of Norfolk as shown on the plat entitled 'Physical Survey of Baymark Yacht Haven, a Condominium.'" However, paragraph 3 of Woodington's bill referred to an exhibit for a more particular description of the property. That exhibit was the same deed referred to in the memorandum of mechanic's lien which described Blue Phoenix's property as it existed before the

---

The trial court, with the apparent acquiescence of counsel, relied on information outside the four corners of the separate bills of complaint in disposing of the demurrers. However, no one has questioned, on appeal, the manner in which the demurrers were handled. That procedure, though a departure from the rules concerning disposition on demurrer, is the law of the case.

condominium was created. In its bill of complaint, Woodington demanded that its lien be enforced against all nine of the original pre-condominium parcels of land owned by Blue Phoenix.

Lincoln Savings and Loan Association and Lincoln Service Corporation, Trustee (hereinafter collectively referred to as Lincoln), as well as Pioneer Federal Savings and Loan Association and Pioneer Financial Corporation, Trustee, f/k/a Pioneer Financial Services, Inc., Trustee (hereinafter collectively referred to as Pioneer) filed separate yet identical demurrers. Pertinent here are the following two grounds contained in the demurrers:

a. that the bill and the mechanic's lien sought to be enforced therein were invalid and unenforceable because the lien was filed as a joint and blanket lien without apportionment among the various condominium units and general and limited common elements; and

b. that the bill and the mechanic's lien sought to be enforced therein were invalid and unenforceable because Woodington by its mechanic's lien had encumbered not only the property submitted to the condominium known as "Baymark Yacht Haven, a Condominium," but also additional land not so submitted and upon which latter land Woodington had added no value by its work, labor, or service.

The trial court sustained the demurrer on both grounds. In a letter opinion, it stated that this Court has narrowly construed the mechanic's lien statutes and that, in the trial court's view, this Court has expressed "a public policy . . . that you cannot intentionally or negligently cloud a title with a claim of lien which is not based on precisely defined limits and proof of labor and materials expended in relation to that property." The trial court wrote further that "[i]n effect you cannot have a prejudgment lien on property assessed in a mistaken manner." Woodington appealed.

### Waterfront Marine's Case

On September 1, 1983, Waterfront Marine Construction, Inc., (Waterfront) entered into a contract with Mid-Atlantic Building Corporation, formerly known as Baymark Builders Corporation (Mid-Atlantic), to demolish certain existing pilings and struc-

tures; to remove existing piers, fixed docks and existing pilings; to repair a bulkhead, to "add additional anchor systems," to repair two sections of timber bulkhead and install 260 linear feet of timber street pile bulkhead for a marina then being built by Mid-Atlantic as principal contractor for Blue Phoenix, Inc. At the time of the contract, Blue Phoenix's property consisted of nine parcels of land located in Norfolk. Waterfront supplied the labor and material as called for in the contract.

On September 6, 1984, as described above in Woodington's Case, Blue Phoenix created a condominium out of a portion of its nine parcels. All the labor and material supplied by Waterfront was limited to condominium property.

On September 17, 1984, eleven days after Blue Phoenix established its condominium regime, Waterfront filed a memorandum of mechanic's lien claiming $12,391.66 for labor and material. Waterfront listed Blue Phoenix as the owner. In its brief description of the property, Waterfront referred to the same deed on which Woodington had relied — the one which described Blue Phoenix's property as the nine parcels that existed prior to the creation of the condominium.

On March 15, 1985, Waterfront filed its bill of complaint to enforce its mechanic's lien. Waterfront, like Woodington, demanded enforcement of its lien against all nine of the original pre-condominium parcels of land owned by Blue Phoenix.

Lincoln and Pioneer filed separate, but identical, demurrers. The grounds were the same as those set forth above in Woodington's case. The trial court sustained both demurrers for the reasons which are articulated in the statement of Woodington's case. Waterfront appealed.

### Duffy's Case

This third case is completely unrelated to the first two. Here, James Duffy, t/a Duffy Roofing Co. (Duffy), entered into a contract in the amount of $19,500 with Flatiron Associates, Limited (Flatiron), to supply labor and material to erect certain improvements on property owned by Flatiron in Norfolk, Virginia.

On December 15, 1986, Duffy filed a memorandum of mechanic's lien claiming $17,000 for labor and material. The memorandum was filed on a form which contained handwritten insertions. In the portion of the memorandum labeled "brief

description and location of real property," Duffy wrote substantially as follows:

Bute & Charlotte St., Norfolk, Va.
#501, 503, 505, 507 Granby St.

Lots 19, 20, 21, Block 6
Plat of O.V. Cottage Co.
Book 187, pg. 550, 1/10/86, 525,000

Duffy's description referred to properties in two completely different places in Norfolk. The Bute and Charlotte address is where Duffy had worked. But the reference to "O.V. Cottage Co." was to land located in the Ocean View section of Norfolk on which Duffy had never worked. Duffy claimed a lien against all the property described in his memorandum of lien.

Defendants Steven C. St. John, Trustee; Phil Stewart, Trustee; First Union National Bank; and Chrysler Condo Developers, Limited Partnership (hereinafter collectively St. John) demurred on two grounds. We are concerned here with the first ground which was as follows:

The Bill and the mechanic's lien sought to be enforced therein are invalid and unenforceable in that Plaintiff, by its mechanic's lien, has encumbered not only the property described in the Bill of Complaint, but also additional land described in the Memorandum of Mechanic's Lien as "Lots 19, 20, 21, Block 6, Plat of O.V. Cottage Company," upon which latter land the Plaintiff has added no value by its work, labor or service."

The trial court sustained the demurrer for the reasons set forth in the description of Woodington's case. Duffy appealed.

### Discussion

These cases present the first opportunity for this Court to address the unadorned issue of what happens when a mechanic overreaches in asserting a lien. Does the entire lien fail or can the trial court simply excise from the lien the property to which the lien cannot properly attach while leaving the lien in place as to the appropriate property?

The trial court concluded that such liens must fail completely. We agree with the trial court.

■ As we stated recently in *Rosser v. Cole*, 237 Va. 572, 576, 379 S.E.2d 323, 325 (1989), a mechanic's lien is purely a creature of statute and is in derogation of the common law. As a result, where there are questions concerning the existence and perfection of such a lien, the mechanic's lien statutes will be strictly construed. *Id.*

■ The reason for such a rule is evident from the priority conferred by statute on a mechanic's lien. Within the parameters set forth in Code § 43-21, the mechanic's lien "leaps to the head of the class," coming before virtually every other lien. It is a powerful device to secure the payment of monies due and owing. The mere filing of the memorandum of lien is enough by itself to "tie-up" a piece of property until the question of the lien is resolved. This is so because the clerk must record and index such memoranda. *See* Code § 43-4.

■ The steps a mechanic must take to perfect a lien are set forth in Code § 43-4; the lien claimant must file a memorandum

> showing the names of the owner of the property sought to be charged, and of the claimant of the lien, the amount and consideration of his claim, and the time or times when the same is or will be due and payable, verified by the oath of the claimant, or his agent, including a statement declaring his intention to claim the benefit of the lien, and giving a brief description of the property on which he claims a lien.

Code § 43-15 provides that "[n]o inaccuracy in the memorandum filed, or in the description of the property to be covered by the lien, shall invalidate the lien, if the property can be reasonably identified by the description given and the memorandum conforms substantially to the requirements of §§ 43-5, 43-8 and 43-10 respectively, and is not wilfully false."

In two opinions, we have spoken to the question of the effect of an over-inclusive mechanic's lien. In *United Masonry v. Jefferson Mews*, 218 Va. 360, 237 S.E.2d 171 (1977), the mechanic entered into two contracts with a condominium developer. One contract was for masonry work on 132 of a total 264 condominium units. The other contract was for work on a "club house" which would be a common element of the condominium regime. When the owner did not pay, the mechanic filed one blanket lien on the entire condominium regime for the work it had done. The trial court

sustained a demurrer which charged that the lien was invalid because it failed to apportion the total amount claimed under the two separate contracts.

■ In *United Masonry* we stated that the precise issue was as follows: "whether the blanket mechanic's lien is invalid for failure to apportion the value of the work performed between the individual condominium units and the common element facilities." 218 Va. at 371, 237 S.E.2d at 178. We held "that under these circumstances, where work has been done and materials furnished under two separate and distinct contracts which added disproportionate values to the properties liened, a memorandum which fails to apportion the amounts due between the several properties benefited is defective and the lien void." *Id.* at 380, 237 S.E.2d at 183.

In the course of *United Masonry*, we pointed out that because the mechanic's contract was for work on only 132 units of a planned 264, it was manifest that there could be no lien against the planned but unbuilt 132 units because those units received no benefit from the work done by the mechanic. We then wrote that

the memorandum does not seek to secure the claim to the extent that plaintiff has added value to the individual units worked on, but attempts to lien other property not benefitted by such work. Consequently, the memorandum fails to substantially comply with Code § 43-3. . . .

*Id.* at 378, 237 S.E.2d at 182. Thus, in *United Masonry* we indicated, without so holding, that an over-inclusive lien was invalid.

We addressed the question again in *Rosser*. There, Rosser, the owner of a 450 acre tract, subdivided it into 77 lots which were served by a network of subdivision streets. Rosser then entered into a contract with Cole for general road clearing and grading. Cole later filed a memorandum of mechanic's lien against the entire 450 acre tract, although he had done no work on any of the 77 lots but had worked only on the roads. Rosser challenged the validity of the lien. The trial court held the lien valid. We reversed.

We held first that Code § 43-3(b) provides the method by which a workman who installs streets must secure a lien and that Cole had failed to follow the statutory requirements. We then focused on whether Cole's lien could be sustained under the general lien statute.

■ We stated that under Code § 43-3(a) a street installer is not entitled to lien rights beyond the roads or streets on which he worked. We then held as follows:

> Because the contractor's memorandum of mechanic's lien failed to correspond to his contract, failed to describe the land and improvements upon which his lien rights existed, and *purported to cover property to which his lien rights did not extend, it was invalid.*

237 Va. at 578, 379 S.E.2d at 327 (emphasis added).

Lincoln and Pioneer argue that *United Masonry* and *Rosser* have decided the issue which is presented in the present appeals. Not surprisingly, Woodington, Waterfront, and Duffy submit that *United Masonry* and *Rosser* are distinguishable. According to them, *United Masonry* was an apportionment case and the statement concerning an over-inclusive memorandum of lien was dicta. The claimants say very little about *Rosser*. Duffy suggests that *Rosser* is not controlling because it is not a case concerning over-inclusiveness but one involving off-site improvements.

The claimants argue further that the relief they seek here was provided by this Court in *West Alex. Prop. v. First Va. Mort.*, 221 Va. 134, 267 S.E.2d 149 (1980). There, two Alexandria, Virginia land owners entered into an agreement to maximize the use of their adjacent properties by relocating their common property boundary and then building an 80-foot wide street with enclosed storm sewer and a relocated sanitary sewer along that boundary. They agreed to share construction costs equally. West Alexandria Properties, Inc. (WAPI) made the "up front" expenditures for the work, then sought to collect half from the adjacent landowner, Landmark Palace Associates (LPA), as agreed. WAPI filed a memorandum of mechanic's lien against LPA's property. By the time of that filing, the road had been dedicated to the city and could not be the subject of a lien. WAPI sought to impose a lien totalling $125,154.47 on LPA's property. However, of the total, only $36,123.70 represented work done on LPA's property. In that situation, we upheld the lien against LPA's property but only to the extent of the value of work done thereon. The claimants argue that because in *West Alex. Prop.* we enforced a lien to the extent that value had been added to land, thus reducing the amount of a

lien, we should, in the present situation simply disregard properties against which a lien could not have been properly asserted.

Finally, the claimants argue that they are saved by Code § 43-15. They contend that their over-inclusive description of property includes the correct property and thus the correct property can be reasonably identified.

We reject all of the arguments advanced by the claimants. Code § 43-15 states that "[n]o inaccuracy . . . in the description *of the property to be covered by the lien*, shall invalidate the lien. . . ." (Emphasis added.) The property to be covered by the lien is the property on which the mechanic has worked and none other. If the mechanic worked on parcel A but imposed a lien upon parcels A, B, & C, we do not consider that an inaccuracy in describing Parcel A. In our view, such a description improperly reaches beyond the required description of the property to be covered by the lien to include property which, in law, *cannot* be covered by the lien. We are persuaded by Lincoln and Pioneer's argument that if Code § 43-15 were read as claimants advocate, lien claimants would be free to impose a lien on any or all of an owner's property — with no concern that the lien be limited to property on which work was done or to which material was supplied — because the lien claimants would have the certain knowledge that any excess property would be released from the lien by the trial court. Such a result would encourage careless, if not vindictive, use of a statutory procedure which, because of its immediate and profound impact upon an owner's property, should require precision and restraint in its use.

Nor does the decision in *West Alex. Prop.* help the claimants. There, land which had been worked on was sought to be impressed with a lien of greater amount than appropriate. The moment the memorandum of lien was filed, the land in question was "tied-up" in litigation; this was so whether the lien was for $1,000 or $100,000. Further, it is the traditional role of courts reviewing mechanic's lien suits to decide whether all or part of the amount of the claimed lien is appropriate.

The present situation is entirely different. Here, land which should never have been made subject to a lien has been made the subject of protracted litigation. Full legal and beneficial use of property which is made subject to an over-inclusive lien cannot be restored to the owner until litigation has run its course. By the simple act of filing a memorandum of mechanic's lien, an appar-

ent lien of high priority has been placed on property which ultimately cannot be called upon to answer the lien. In our view, the statutory scheme, as it has been interpreted by this Court, is one which places great power in the hands of mechanics but which purposefully contains that power within carefully circumscribed limitations. The aim of the statutory scheme is to aid the mechanic while protecting the owner from abuse. The potential for abuse that exists in cases of the present kind simply did not exist in *West Alex. Prop.* There, all the landowner faced was the traditional problem that a claimant might claim a greater amount than his proof could support.

We hold, on the basis of *United Masonry* and *Rosser*, that where, as here, a mechanic files a memorandum of mechanic's lien against two or more parcels but has not worked on all the parcels and where the mechanic attempts to enforce that lien against the several properties, that lien must be declared invalid in its entirety. Mechanic's lien law in Virginia will not permit a claimant to file an over-inclusive lien and then leave it to the trial court to excise any excess property. It is the mechanic's duty to place his lien upon the property on which he worked and no more.[2]

For all the foregoing reasons, the judgment of the trial court in the three separate cases will be affirmed.

Record No. 871399 — *Affirmed.*
Record No. 871401 — *Affirmed.*
Record No. 881255 — *Affirmed.*

[2] We express no opinion as to the outcome in a situation where a mechanic files an over-inclusive memorandum yet voluntarily attempts to amend to limit the lien's reach to the proper amount of property.