## ADDINGTON-BEAMAN LUMBER COMPANY, INC.

### V.

## LINCOLN SAVINGS AND LOAN ASSOCIATION, ET AL.

Record No. 901209

April 19, 1991

Present: All the Justices

*James C. Howell (Willcox & Savage*, on briefs), for appellant.
*David K. Sutelan; Jeffrey D. Tarkington (Breeden, MacMillan and Green*, on brief), for appellees.

JUSTICE COMPTON delivered the opinion of the Court.

In this creditors' rights controversy, we consider the validity of a blanket mechanic's lien filed against a single building in a townhouse development. The building contained ten individual residential units.

During 1984, appellant Addington-Beaman Lumber Company, Inc., a material supplier, provided on open account to Mid-Atlantic Building Corporation, a general contractor, labor and materials used during construction on properties owned by Baymark Companies, Inc.

The construction generating this dispute involved Glenwood Townhouses, located in Norfolk. When the general contractor became delinquent in its account, the supplier separated the open account into charges by building in the development, and subsequently filed timely mechanics' liens on separate buildings in the Glenwood project. Only two of the liens are at issue in this appeal.

The supplier filed one memorandum of lien in the unapportioned amount of $45,525.62 for "materials or services furnished" specified as: "Roof, trusses, lumber, roofing mat, windows, etc." The property was described as: "Building 3, Glenwood, 229, 231, 233, 235, 237, 239, 241, 243, 245 and 247 Greenbrier Avenue, Norfolk, Virginia."

The supplier filed another lien in the unapportioned amount of $46,798.15 for "materials or services furnished" specified as: "Lumber, trusses, etc." The property was described as: "Building 4, Glenwood, 230, 232, 234, 236, 238, 240, 242, 244, 246 and 248 Greenbrier Avenue, Norfolk, Virginia."

Subsequently, the supplier instituted the present litigation by filing bills of complaint to enforce the respective mechanics' liens naming as defendants, among others, the appellees Lincoln Savings & Loan Association, the construction lender and a lienor; Lincoln Service Corporation, Trustee, trustee on the deed of trust securing the construction loan; and Glenwood Townhouses, Inc., purchaser of the property at foreclosure. The defendants demurred to the bills, challenging the validity of the supplier's use of blanket liens.

The trial court overruled each demurrer without prejudice, due to the necessity to develop facts surrounding the issues of law. Subsequently, the cases were consolidated and referred to a commissioner in chancery. A stipulation agreement with extensive exhibits was submitted to the commissioner in lieu of an ore tenus hearing. The issues to be decided by the commissioner were mainly limited to the questions raised on demurrer.

In May 1989, the commissioner reported and ruled against the supplier, finding that the blanket liens were invalid in that the supplier had the duty to apportion in each memorandum the amount of material and charges upon each individual residential unit or lot. After considering exceptions to the report, the trial court confirmed it, ordering the bills dismissed and the liens released. We awarded the supplier an appeal from the June 1990

judgment order entered in favor of the defendants. For clarity, we shall refer to the liens as one because of their similarity.

On appeal, the dispositive question is whether this blanket lien filed upon the building is invalid and unenforceable because the supplier failed to apportion in the lien memorandum the amount of its claim for the work and materials furnished by it on each of the ten lots described in the memorandum. Even though the supplier presents several bases for its appellate argument, the crux of its position is that where there is a general account for an entire subdivision or project, there is no legal requirement that a lienor allocate by lot, "even where feasible to do so." We do not agree.

Prior to embarking on a legal analysis, we will mention several significant facts. In the first place, the record establishes that the liened structure, a specific townhouse edifice, has ten individual units joined by party walls susceptible to fee simple ownership. In effect, there are ten lots represented in the building. In the second place, there exists no single, interdependent contract requiring the general contractor to buy and the supplier to sell. Instead, there is a classic open account relationship evidenced by many individual invoices, delivery tickets, work orders, and other similar documentation.

The applicable law is settled. Code § 43-3 authorizes a lien upon a "building or structure," and upon so much land as shall be necessary for the convenient use and enjoyment of the premises, for the labor performed and materials furnished in the construction of any such building or structure. This is consistent with the policy of the law to give the security of a lien to those who, by their labor and materials, have enhanced the value of the "building or structure" to the extent they have added to its value, as demonstrated by allocation of the costs in their memoranda of lien, but not to give a lien therefor upon property not benefitted by such labor and materials. *United Masonry, Inc.* v. *Jefferson Mews, Inc.*, 218 Va. 360, 378, 237 S.E.2d 171, 182 (1977); *Gilman* v. *Ryan*, 95 Va. 494, 498, 28 S.E. 875, 876 (1898). *See Rosser* v. *Cole*, 237 Va. 572, 576-77, 379 S.E.2d 323, 325-26 (1989). This policy becomes especially significant where, as here, the interests of third parties, such as construction lenders, other mechanics' lienors, and subsequent purchasers, may be impinged upon by a joint and blanket lien. *See Weaver* v. *Harland Corp.*, 176 Va. 224, 227-28, 10 S.E.2d 547, 548 (1940).

■ In contrast, however, the law is equally settled that under certain circumstances, a joint and blanket lien is valid and the lien claimant has no duty to apportion in the memorandum the amount of the lien. Such circumstances exist when there is a single contract for the entire work to be performed on the subject property as a whole, and there are no provisions in the agreement allocating a specific portion of the contract price to any individual lot. *Sergeant* v. *Denby*, 87 Va. 206, 12 S.E. 402 (1890); *In re Thomas A. Cary, Inc.*, 412 F.Supp. 667 (E.D. Va. 1976), *aff'd per curiam*, 562 F.2d 48 (4th Cir. 1977). Typically, such a situation will arise if there is a contest involving contractors, subcontractors, and owners when no interests of third parties are implicated. *Weaver*, 176 Va. at 234, 10 S.E. at 551. Here, the supplier unsuccessfully attempts to qualify under the *Sergeant* and *Cary* rationale.

■ Under the circumstances of this case, the mechanic or supplier had the duty to apportion the amounts due among the several lots benefitted, the evidence establishing that the materials furnished have added disproportionate values to the individual lots within the townhouse structure. Otherwise, lienors " 'could so shift their liens as to unduly burden some of the lien subjects and relieve others, to the extent of imperiling the interests of other lien creditors which would not be consonant with the intent and spirit of the statute and would be offensive to good conscience and equity.' " *PIC Construction Co.* v. *First Union Nat. Bank*, 218 Va. 915, 921-22, 241 S.E.2d 804, 808 (1978) (quoting *Weaver*, 176 Va. at 227-28, 10 S.E.2d at 548).

■ The duty to apportion in this case is not diminished by the fact that the parties dealt on an open account basis. As the commissioner explicitly found, and contrary to the supplier's argument, the relationship here did not involve a *Sergeant* "single contract" for the entire work to be performed for a specified amount on the project as a whole, where there is no duty to apportion. Instead, there was a series of individual but related transactions reflected in the invoices, delivery tickets, and work orders. Under these circumstances, where, as here, there were documents which can be identified with charges for individual units, those charges should have been aggregated for the filing of memoranda of lien on specific units.

■ Furthermore, we reject the supplier's contention that, even if allocation is required where feasible, the allocation of its lien by

lot "was impractical — if not impossible." The commissioner expressly found that the supplier "was able to allocate a substantial portion of its claims on an individual lot basis, as evidenced by invoices, delivery tickets, and work orders, but failed to do so." This finding, adopted by the trial court, is amply supported by the record.

Consequently, we hold that the trial court correctly concluded that the bills to enforce the liens were deficient because they were based on memoranda filed as joint and blanket liens without apportionment among the individual lots within the respective buildings. Therefore, the judgment below will be

*Affirmed.*