## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Jaynes Concrete, Inc.

v.

Seabrook Corp. et al.

January 30, 1992

Case No. (Chancery) 21633

BY JUDGE ROBERT P. FRANK

Jaynes Concrete, the Plaintiff, entered into an oral contract with PHP Enterprises in August of 1990 to supply concrete and labor to pour driveways for four separate properties, i.e. 436 Truxton Court, Newport News, Virginia, Lot 8, Colony Pines, Section 4A (which included a patio); 409 Wiltshire Crescent, Newport News, Virginia, Lot 164, Colony Pines, Section 7B; 411 Wiltshire Crescent, Newport News, Virginia, Lot 165, Colony Pines, Section 7B; 413 Wiltshire Crescent, Newport News, Virginia, Lot 166, Colony Pines, Section 7B. The agreed-on price for labor was $45.00 per square yard of concrete poured plus the cost of the concrete. Defendant's Exhibit # 1. Each driveway was of different dimensions. A price per square yard delivered is the customary contractual procedure for this type of work. There was never any agreement that the price should be allocated per lot. Jaynes testified he could have measured each driveway fairly accurately but that was not the business custom. Approximately 60.75 yards of concrete were poured, requiring approximately six deliveries by the concrete truck. Generally, a driveway takes between 9 to 12 yards and is poured 5 to 5½ inches deep.

On December 6, 1990, Jaynes filed an unapportioned "blanket" mechanic's lien claiming $6,638.42 due covering the four lots. Lot 165 was released on April 30, 1991, for $2,143.47, which included attorney fees and interest, although there was no agreement to pay interest or attorney fees. Brian Jaynes testified he wanted the entire $6,638.42 upon the first release. He further stated he tried to get as

much out of each release as he could. He would have asked for more for each release if he could have gotten it. Jaynes released Lot 8 on August 1, 1991, for $2,081.55 although the Statement of Account filed with the Bill to Enforce allocates $1,701.56 to that lot. The amount allocated to Lot 165 in the Statement of Account was $1,605.62. When the Statement of Account was filed, Lot 165 had already been released. The Statement gives a $1,659.61 credit for Lot 165. Jayne attributes the difference in figures to the fact that they got as much as they could.

When Jaynes was asked for a release figure, he added $50.00 to Lot 8 for the patio and then divided the amount due equally between all four lots. Jaynes indicated that he could have made the same computations prior to filing the Memorandum of Mechanic's Lien but did not apportion because no one asked him to do so.

The Bill to Enforce was filed on June 9, 1991.

As stated in *Rosser v. Cole*, 237 Va. 572, 576, 379 S.E.2d 323, 325 (1989), a mechanic's lien is purely a creature of statute; it must have its foundation in a contract, with which it must correspond. Citing *Sergeant, et ux. v. Denby, et al.*, 87 Va. 206, 208, 12 S.E. 402, 402 (1890). Being in derogation of the common law, the statutes relating to the existence and perfection of a mechanic's lien are strictly construed. *Clement v. Adams Bros.-Paynes Co.*, 113 Va. 547, 552, 75 S.E. 294, 296 (1912).

The reason for such a rule is evident from the priority conferred by statute on a mechanic's lien. Within the parameters set forth in Code § 43–21, the mechanic's lien "leaps to the head of the class," coming before virtually every other lien. It is a powerful device to secure the payment of monies due and owing. The mere filing of the memorandum of lien is enough by itself to "tie-up" a piece of property until the question of the lien is resolved. This is so because the clerk must record and index such memoranda. *See* Code § 43–4; *Woodington Electric, Inc. v. Lincoln Savings and Loan Assoc., et al.*, 238 Va. 623, 630, 385 S.E.2d 872, 875 (1989).

The *Woodington* court went on to say:

> In our view, the statutory scheme, as it has been interpreted by this Court, is one which places great power in the hands of mechanics but which purposefully contains that power within carefully circumscribed limitations. The aim of the statutory scheme is to aid the mechanic while protecting the owner from abuse. *Id.* at 634.

The applicable law is settled. Code § 43–3 authorizes a lien upon a "building or structure," and upon so much land as shall be necessary for the convenient use and enjoyment of the premises, for the labor performed and materials furnished in the construction of any such building or structure. This is consistent with the policy of the law to give the security of a lien to those who, by their labor and materials, have enhanced the value of the "building or structure" to the extent they have added to its value, as demonstrated by allocation of the costs in their memoranda of lien, but not to give a lien therefor upon property not benefitted by such labor and materials. *United Masonry, Inc. v. Jefferson Mews, Inc.*, 218 Va. 360, 378, 237 S.E.2d 171, 182 (1977); *Gilman v. Ryan*, 95 Va. 494, 498, 28 S.E. 875, 876 (1898); *see, Rosser v. Cole*, 237 Va. 572, 576–77, 379 S.E.2d 323, 325–26 (1989); *Addington-Beaman Lumber Co. v. Lincoln Savings & Loan*, 241 Va. 436, 439, 403 S.E.2d 688, 689–90 (1991).

The Defendant's, Sovran Bank, opposition to the lien has two elements:

(1) That is it an unapportioned "blanket" lien on four separate parcels and does not fall under the "single contract" theory of *Sergeant v. Denby*, 87 Va. 206, 12 S.E. 402 (1890).

(2) That *Sergeant* would not apply in any event, since the rights of third parties have intervened.

As in any "blanket" mechanics lien, the mechanic argues that its case falls within the *Sergeant* criteria and the lien's opponent argues that it does not.

*Sergeant v. Denby, supra,* involved the construction of two houses in close proximity to each other. The contract provided for payment in lump sum for both buildings. The subcontractor had provided certain materials to the houses and, after completion of the second house, filed a joint lien on both houses and lots. The owner, Sergeant, challenged the validity of the joint lien arguing that the statute did not provide for a lien and further that a lien must be separate and distinct on each building for the materials delivered for its construction. The mechanic's lien statute employed in *Sergeant* does not differ materially from the statute the defendants-appellees proceeded under in the filing of the mechanic's liens at issue. The Supreme Court of Virginia concluded that the lien was valid for two reasons. First, a separate contract for each house was not negotiated. Second, the contract did not provide that a separate account for materials should be maintained for each house. The contract was for both

houses, and the materials contracted for were for the entire job and not each house separately. Therefore, "the two buildings must be considered as, in effect, one piece of work," *Sergeant v. Denby, supra,* 87 Va. at 208, 12 S.E. at 402, for purposes of the lien.

The next case decided that addressed the *Sergeant* criteria was *Gilman v. Ryan,* 95 Va. 494, 28 S.E. 875 (1898). Ryan's agreement was to furnish the materials and put two coats of plastering on the five properties at the rate of 22 cents per yard. Ryan filed an unapportioned blanket lien of $2,576.20 on all five properties. *Gilman* said that *Sergeant* did not apply "where an estimate is made or the price fixed for the materials furnished and work done upon each, without disregarding both the letter and the spirit of the mechanic's lien law . . . ." If one account can be filed where the materials have been furnished and the work done upon two buildings erected upon disconnected lots, under a contract which estimates or fixes the price for the materials to be furnished and the work to be done upon each, the account must show the estimate made or the prices fixed on each, in order that all parties in interest may be able to see from the account the amount that is chargeable on each building. The logic of the holding of the Virginia Supreme Court is compelling. If, after payment of some of the monies owing, the plaintiffs were able to release a portion of the properties, then they could have ascertained *ab initio* which materials were used in the buildings or structures. *Id.* at 877.

While the concept of blanket liens nor the ruling in *Sergeant* has never been repudiated by the Supreme Court of Virginia, our Supreme Court has never again found that the *Sergeant* criteria existed in the numerous cases involving blanket liens.

A Federal trial court in *In re Thomas A. Cary, Inc.,* 412 F. Supp. 667 (E.D. Va. 1976) *aff'd per curiam,* 562 F.2d 48 (4th Cir. 1977), upheld a blanket lien when a supplier furnished concrete, on an open account, as it was needed. One truckload of concrete could be poured on several lots. Curbs and gutters were also poured, the costs of that work could not be attributable to any particular lot. It is important to note that none of the lots were released from the lien at any time. The court opined:

> If a joint lien is filed, the premise underlying the filing is that the materials may not be segregated and allocated to a specific lot or structure. By its nature, a joint lien confesses an inability to attribute the materials with particularity. Releases belie this inability to allocate. If a lienor is able to

issue a release of some of the lots and structures, then it is obvious that the lienor has the capacity to allocate the materials among various properties. Releases are the fatal defect to a claim that the materials may not be attributed to a specific property. In *Weaver v. Harland*, 176 Va. 224, 10 S.E.2d 547 (1940), lienors released some of the properties after partial payment and correspondingly reduced the amount of money sought from the owner. The irony of the situation is that the plaintiffs in *Weaver* persisted in their claim pursuant to the joint lien against the unreleased properties. The logic of the holding of the Virginia Supreme Court is compelling. If, after payment of some of the monies owing, the plaintiffs were able to release a portion of the properties, then they could have ascertained *ab initio* which materials were used in the buildings or structures. *Id.* at 673 and 674.

In approving a blanket lien, the Federal Court found that the supplier had not engaged in any releases.

In the instant matter, there was not a single piece of work, nor was there a single contract for the entire work since the contract was for a price per unit of concrete, to be delivered to each of four locations. Each lot had different size driveways, and for one lot a concrete patio was poured in addition to the driveway. The supplier did not apportion the cost when it filed its Memorandum on December 6, 1990, but was able to and did in fact apportion some five months later when it released Lot 165. It further apportioned all of the costs when it filed its Bill to Enforce on June 9, 1991. The facts of the instant case are identical to those of *Gilman* where there was a per unit cost.

It is therefore this Court's opinion that the "blanket" mechanic's lien is invalid since it failed to apportion in the Memorandum of Lien the amount of its claim for the work performed and materials furnished by it on each of the various lots described therein.

Even assuming that there was a valid "blanket" lien, Sovran Bank argues that *Sergeant* is limited to its facts, i.e. a lien dispute between the contractor and owner. This position seems to be upheld in *Weaver v. Harland, supra*, which limits the *Sergeant* rationale to a case between the general contractor and the owner. The inference is that the holding would have been different had the interests of third parties been present. *Id.* at 234.

The court in *Addington-Beaman Lumber Co. v. Lincoln Savings & Loan*, 241 Va. 436, 403 S.E.2d 688 (1991), reaffirms the *Weaver*

ruling when discussing "blanket" liens. Individual apportioned liens becomes especially significant where, as here, the interests of third parties, such as construction lenders, other mechanics' lienors, and subsequent purchasers, may be impinged upon by a joint and blanket lien. *Id.* at 439. The court further stated that the *Sergeant* criteria will typically arise if there is a contest involving contractors, subcontractors, and owners when no interests of third parties are implicated. *Weaver*, 176 Va. at 234, 10 S.E. at 551.

Under the circumstances of *Addington-Beaman*, the mechanic or supplier had the duty to apportion the amounts due among the several lots benefitted, the evidence establishing that the materials furnished have added disproportionate values to the individual lots within the townhouse structure. Otherwise, lienors "could so shift their liens as to unduly burden some of the lien subjects and relieve others, to the extent of imperiling the interests of other lien creditors which would be consonant with the intent and spirit of the statute and would be offensive to good conscience and equity." *PIC Construction Co. v. First Union Nat. Bank*, 218 Va. 915, 921–22, 241 S.E.2d 804, 808 (1978) (quoting *Weaver*, 176 Va. at 227–28, 10 S.E.2d at 548). *Id.* at 440.

Beginning with *Weaver* and including *United Masonry v. Jefferson Mews*, 218 Va. 360 (1978); *PIC Company v. First Union Bank*, 218 Va. 915, 241 S.E.2d 804 (1978); *West Alexandria Property v. First Va. Mort.*, 221 Va. 134, 267 S.E.2d 149 (1980); *United Va. Mort. Corp. v. Haines, Inc.*, 221 Va. 1047 (1981); *Woodington Electric v. Lincoln Savings*, 238 Va. 623, 385 S.E.2d 872 (1989), the Supreme Court of Virginia in addressing releases and overinclusive liens, has consistently held that the failure to allocate pervades the release issue. *PIC* at 920.

*Weaver* involved a blanket lien where a number of lots were released, yet the claimants attempted to enforce the entire amount due for all of the lots against the remaining unreleased lots. The court pointed out the lienor could then so shift their liens as to unduly burden some of the lien subjects and relieve others, to the extent of imperiling the interests of other lien creditors which would not be consonant with the intent and spirit of the statute and would be offensive to good conscience and equity. *Id.* at 228, 229.

The *PIC* court found that there were third persons whose interests could be injuriously affected by the release, as the chronology developed. Based on the facts of *PIC*, the court held that there was an

opportunity for the lienor to shift amounts and juggle claims among the individual properties involved.

The facts of the instant case clearly shows an effort on Jaynes' part to shift the liens so that one lot would bear the cost of the work done on another lot. Jaynes very candidly testified his intention was to get as much from each release as he could. The lien is thereby void under the rationale as stated above.

This court previously denied Sovran's Demurrer without prejudice due to the necessity to develop the facts surrounding the issues of law.

The court, under the provisions of § 43–17.1, Code of Virginia, declares that the Memorandum of Mechanics Lien filed December 6, 1990, in the Clerk's Office of this court is invalid and unenforceable; that the Bill to Enforce be dismissed with prejudice as to Sovran Bank, N.A., Cobb and Littlepage, Trustees; that the Memorandum of Mechanics Lien aforesaid be released of record and the claims therein forever discharged as to the four lots described therein; that this matter remain on the docket as to the Defendants Seabrook Corporation and PHP Enterprises, Inc., if the Plaintiff so chooses.