## CIRCUIT COURT OF LOUDOUN COUNTY

Tart Lumber Co., Inc.

v.

Drewer Development Corp. et al.

July 17, 1995

Case Nos. (Chancery) 13686 and 13587

BY JUDGE THOMAS D. HORNE

The above-referenced suits to enforce mechanic's liens have been consolidated and are before the Court for consideration of Complainant's Exceptions to the Commissioner's Report. For the reasons set forth below, Complainant's exceptions are overruled, and the Commissioner's findings that mechanic's liens in these cases representing claims of $49,527.25 are enforceable and that those enforceable liens shall bear interest of 18% *per annum* are confirmed.

The events giving rise to this litigation are not in dispute. In 1988, Complainant Tart Lumber Company, Inc., a supplier of building materials, entered into a general credit application/credit agreement (hereinafter "credit agreement") with Defendant Drewer Development Corporation, a general contractor/developer. The credit agreement referenced no particular Drewer Development project nor created any obligation on Drewer Development's part to purchase materials from Tart Lumber. Rather, it merely established the terms of the open account on which Tart Lumber would supply building materials on credit to Drewer Development in response to any subsequently rendered purchase orders from Drewer Development. While silent on the matter of when bills would be presented, the credit agreement provided that bills were due upon presentation, that bills were past due after the 25th day of the month, and that past due accounts would be assessed a service charge of 1.5% per month.

Pursuant to that arrangement, Tart Lumber furnished building materials on credit to Drewer Development for use in multiple dwellings on multiple lots located in several subdivisions in Loudoun and Fairfax Counties. In each instance, Drewer Development first provided Tart Lumber and other vendors with a list of required supplies, a materials take-off, for a particular house to be built on a particular lot. Tart Lumber and other suppliers then submitted bids to Drewer Development for prices to be charged for various items on the materials take-off, with the agreement being that such bid prices would remain firm for thirty days. Drewer Development then decided from whom to purchase what materials and issued a corresponding purchase order to those vendors. If Tart Lumber was selected, it provided the requested material at the bid price and issued an invoice for those materials. Thus, each delivery of materials by Tart Lumber to a Drewer Development job site and each pickup of materials from Tart Lumber by Drewer Development was in response to a specific purchase order issued by Drewer Development requesting specific materials. In no case did Tart Lumber contract to provide a complete house package. Furthermore, Tart Lumber's only obligation under its arrangement with Drewer Development was to bill any purchase order at the agreed bid price. Similarly, prior to issuing a purchase order to Tart Lumber, Drewer Development had no obligation to make any purchases from Tart Lumber. It was free to purchase any or all materials from other suppliers. Billing on the account was accomplished by monthly statements delineating unpaid invoices and enumerating the total balance due on the open account.

On December 28, 1990, after Drewer Development became delinquent on its account, Tart Lumber filed memoranda of mechanic's liens on twelve separate properties located in two subdivisions in Loudoun County. The instant suits to enforce the liens were filed June 27, 1991, against Drewer Development and Co-defendants First American Bank of Virginia, Commonwealth Abstract Corporation, and William L. Matson, the secured party and the trustees respectively under Drewer Development's construction loan. A Decree of Reference consolidating the two cases and appointing a Commissioner in Chancery was entered by this Court on June 8, 1994.

The Commissioner conducted a hearing on October 5, 1994, received post-trial memoranda from the parties shortly thereafter, and filed a report on March 10, 1995, finding that $42,086.26 of the total $91,613.51 lien amount claimed by Tart Lumber in these suits was unenforceable in that

the corresponding lien memoranda had not been timely filed pursuant to Virginia Code § 43-4. Tart Lumber, asserting the Commissioner misapplied the 90-day time limitation of Code § 43-4, filed Exceptions to the Commissioner's Report on March 20, 1995.

The time within which a lien memorandum must be filed by a claimant is established by Virginia Code § 43-4 as "not later than ninety days from the last day of the month in which he last performs labor or furnishes material." The question, then, that the Commissioner confronted and that presently commands the Court's consideration is when did Tart Lumber last furnish material to Drewer Development, or expressed in terms more relevant to the instant deliberations, when did Code § 43-4's 90-day limitation for filing a memorandum of lien begin to run given the factual circumstances of these cases.

Although seemingly a straightforward matter of chronology and numerical calculation, resolution of the inquiry as to when the 90-day time limitation commenced with regard to Tart Lumber's liens derives more from an examination of the business arrangement between the parties than of the calendar. For it is well settled in Virginia that a mechanic's lien, being strictly a creature of statute, "must have its foundation in a contract *with which it must correspond.*" *Rosser v. Cole*, 237 Va. 572 (1989) (citing *Sergeant v. Denby*, 87 Va. 206 (1890)). Therefore, in order to determine when the 90-day limit commenced, the Court must first ascertain upon which underlying contract or contracts Tart Lumber's liens are based. And if Tart Lumber furnished materials to Drewer Development pursuant to and in fulfillment of a single, continuous underlying contract, as Complainant suggests, citing the credit agreement and the open account established in accordance therewith, the time limitation within which the liens must be filed began to run from the last day of the month in which the materials corresponding to the *last* sale on the open account for each lot were furnished. If, however, items on the account were furnished under separate underlying contracts, as Defendants maintain occurred here, the time limitation began to run from the last day of the month in which materials corresponding to *each* sale were furnished. *See, e.g., First National Bank of Richmond v. William R. Trigg Co.*, 106 Va. 327 (1907); *see also* 53 Am. Jur. 2d, *Mechanics' Liens*, §§ 196-199.

Neither side in this matter disputes that the time within which a memorandum of mechanic's lien must be filed is governed by the underlying contract upon which the lien is based. Neither do they contest the notion that Tart Lumber furnished building supplies to Drewer Development un-

der an open account. Where the parties differ is in identifying the underlying contract or contracts upon which the instant lien claims are based. Tart Lumber argues that because it furnished Drewer Lumber materials under an open account, the liens have their foundation in the single, continuous contract manifested by the terms of the credit agreement. Conversely, Defendants argue that the liens are based on separate, independent contracts created at the time of each sale and reflected in the specific purchase orders issued by Drewer Development and the delivery by Tart Lumber of the corresponding requested materials.

In reaching the conclusion that some of Tart Lumber's lien memoranda, representing $42,086.26 in claims, had been filed after the 90-day time limit prescribed in Code § 43-4 had expired, the Commissioner held that Tart Lumber's liens were founded on individual contracts created at the time of each sale rather than on the credit agreement that established the open account. According to the Commissioner's findings, the credit agreement was not a contract with which Tart Lumber's liens could correspond because it failed to create any obligation to buy or to sell. The materials supplied by Tart Lumber were furnished pursuant solely to the obligation created by specific purchase orders and Tart Lumber's acceptance of the offers therein. Hence, the 90-day limit was triggered, in the Commissioner's opinion, by each individual sale. The Court agrees.

In *Addington-Beaman Lumber Co. v. Lincoln Savings & Loan Ass'n*, 241 Va. 436 (1991), the Virginia Supreme Court found that a "classic open account" is one where "there exists no single, interdependent contract requiring the general contractor to buy and the supplier to sell." The evidence in the instant cases clearly demonstrates, as the Commissioner found, that the subject sales made by Tart Lumber to Drewer Development were accomplished pursuant to a classic open account. For unlike the more typical open-account agreement in which the parties contractually incur in advance an obligation to buy or to sell certain as yet unspecified or unpriced supplies or labor (for example, where a supplier contracts with a developer to furnish on credit all such materials necessary to complete certain houses), here the credit agreement entered into by Tart Lumber and Drewer Development established solely the credit and payment terms of the open account. By itself the credit agreement created no obligation on Tart Lumber to supply any materials to Drewer Development; nor did it obligate Drewer Development to purchase any materials from Tart Lumber. Such obligations, as shown by the evidence and as noted above, were

created only upon the issuance of a purchase order by Drewer Development and the furnishing of the corresponding materials by Tart Lumber.

The Virginia Supreme Court, in *American Standard Homes Corp. v. Reinecke*, 245 Va. 113 (1993), recently faced the task similar to this Court's of determining, for purposes of applying the filing limitation prescribed by Code § 43-4, whether certain building materials specified in a later purchase order were furnished pursuant to a single, "open ended" earlier contract or under a separate, individual contract. In that case, the complainant supplier, American Standard, entered into a "basic" contract to sell the developer, CDH, materials for a number of prefabricated houses. They then entered into a second "material order" contract for each lot, specifying the specific house model and options. Any lost or damaged materials were then ordered by CDH separately as needed by purchase orders. CDH subsequently defaulted on its payment obligations, and American Standard filed mechanic's liens. American Standard claimed that the 90-day filing requirement did not begin to run until the last day of the month in which the additional replacement materials were delivered since they were furnished under a single, continuous contract. Defendants countered with the argument that the purchase orders constituted separate contracts that did not extend the filing deadlines for the original contracts. Thus, as in the matter *sub judice*, if the contract underlying the mechanic's liens was found to be single and continuous, the lien memoranda would be deemed timely filed, and if the underlying contract was separate, the filing of the memoranda would be untimely.

In holding that the liens had been untimely filed and hence unenforceable, the Court in *American Standard Homes Corp.* ruled that "[n]either the basic contract nor the material order contract required CDH to purchase such [replacement materials] from American Standard; CDH was free to contract with other materialmen for materials needed to replace those delivered earlier by American Standard." *Id.* at 120. The Court further found that "[i]n its purchase orders, CDH offered to buy replacement parts from American Standard[;] American Standard accepted that offer by delivering the materials." *Id.* Thus, in the Court's view, "this was a contract, one separate and apart from the material order contract." *Id.* Therefore, because the developer was free to contract for the purchase of replacement materials with any supplier, the purchase of replacement materials represented a separate contract. Additionally, because it was pursuant to a separate contract, the purchase of the replacement materials did

not extend the date of which the 90-day time limitation began to run for the mechanic's liens that corresponded to the earlier contracts.

Applying the same reasoning to the present cases, it is abundantly clear to this Court that because it created no obligation to buy or to sell materials, the credit agreement entered into by Tart Lumber and Drewer Development cannot be found by this Court to be the contract to which Tart Lumber's mechanic's liens correspond. The credit agreement, as Complainant lucidly explained in its post-trial memorandum, did establish the credit and payment terms of the open account under which all the relevant sales were made. It did not, however, require that a single sale ever be made. It created solely a "classic" open account as defined in *Addington-Beaman Lumber Co.* Drewer Development, like the developer who required replacement materials in *American Standard Homes Corp.*, was free to contract with any supplier to purchase materials. It was under no obligation to purchase materials from Tart Lumber. Only when Drewer Development made an offer via a purchase order to purchase specified materials from Tart Lumber, and Tart Lumber accepted that offer by delivering or supplying the ordered materials was a contractual obligation to buy and to sell created.

Consequently, the Court finds, as did the Commissioner, that there is no single contract upon which the mechanic's liens that are the subject of these suits to enforce are based. Rather, the liens correspond to separate contracts entered into by Drewer Development and Tart Lumber at the time of each sale, as evinced by the individual purchase orders and invoices generated and issued for each sale. Accordingly, it is the Court's opinion that the prescribed 90-day period within which a memorandum of mechanic's lien must be filed began to run from the last day of the month in which the building materials corresponding to each sale were furnished.

As previously noted, all of Tart Lumber's memoranda of mechanic's liens in these cases were filed December 28, 1990. Therefore, those lien claims that are for materials that were furnished by Tart Lumber prior to September 1, 1990, are not enforceable in that they were not timely filed under Code § 43-4. A review of the record shows that memoranda of mechanic's liens representing claims totaling $49,527.25 were timely filed by Tart Lumber and are enforceable, and memoranda representing $42,086.26 were filed late and hence are not enforceable. Needless to say, had the credit agreement created an obligation to buy and sell, the result in these cases may have been different.

Furthermore, though not a subject of Complainant's Exceptions to the Commissioner's Report, the question of whether the contractual interest rate of 18% *per annum* on past due accounts, as provided for in the credit agreement, should apply to the enforceable liens in these cases was raised before the Commissioner by Complainant. Lest there be any doubt, the Court confirms the Commissioner's findings relevant to the issue and finds his resolution of the matter appropriate. Accordingly, for the reasons stated in the Commissioner's Report, and in accordance therewith, the Court awards interest at the rate of 18% *per annum* on the enforceable liens from the date claimed until fully paid.

The Commissioner's Report, constituting an accurate reflection of both the facts in evidence in these cases and the appropriate application of law, is thus affirmed in its entirety.